Argued and submitted August 4, 2003; resubmitted en banc January 16; affirmed
March 24, 2004

In the Matter of the Compensation of
Nicholas P. Wart, Claimant.

SAIF CORPORATION
and P & A Metal Fab, Inc.,
*Petitioners,*

*v.*

Nicholas P. WART,
*Respondent.*

01-00776; A116265

87 P3d 1138

David L. Runner argued the cause and filed the brief for petitioners.

No appearance for respondent.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Brewer, Schuman, and Ortega, Judges.

DEITS, C. J.

Edmonds, J., dissenting.

**DEITS, C. J.**

SAIF Corporation (SAIF) and P & A Metal Fab, Inc., seek judicial review of a Workers' Compensation Board (board) order that awarded claimant attorney fees under ORS 656.386(1) for prevailing over a noncooperation denial— that is, a denial pursuant to *former* ORS 656.262(15) (2001), *renumbered as* ORS 656.262(14) (2003).[1] On review, SAIF asserts that claimant was not entitled to attorney fees under ORS 656.386(1) and that, even if claimant is entitled to fees, the board's explanation for its $1,200 award is inadequate for judicial review. We review claimant's entitlement to attorney fees for errors of law and the board's award of fees for abuse of discretion, ORS 656.298(7); ORS 183.482(8), and affirm.

In November 2000, claimant apparently injured his back at work and filed a workers' compensation claim. There-after, SAIF, claimant's employer's insurer, requested that the Director of the Department of Consumer and Business Services suspend claimant's compensation because he had not scheduled an interview with SAIF. On January 2, 2001, the director issued a notice of suspension, and, on January 12, the director issued the order suspending claimant's compensation pursuant to ORS 656.262(15). Thereafter, in January, claimant requested a hearing. On February 1, before the expiration of the 30-day time period provided for in ORS 656.262(15), SAIF denied claimant's claim. Its letter to claimant stated, in part:

"You failed to cooperate with our investigation of your claim. Pursuant to ORS 656.262(15), OAR 436-060-0135

---

[1] *Former* ORS 656.262(15) provides, in part:

"If the director finds that a worker fails to reasonably cooperate with an investigation involving an initial claim to establish a compensable injury * * *, the director shall suspend all or part of the payment of compensation after notice to the worker. If the worker does not cooperate for an additional 30 days after the notice, the insurer or self-insured employer may deny the claim because of the worker's failure to cooperate."

We note that, even though the language of *former* ORS 656.262(15) (2001) was not amended in 2003, all references in this opinion to ORS 656.262(15) are to the *former* 2001 version in order to be consistent with the record and the parties' briefing.

and the January 12, 2001 Order suspending compensation, *we deny your claim*. This is not a denial on the merits."[2]

(Emphasis added.)

The administrative law judge (ALJ) upheld the order suspending claimant's compensation but set aside the denial because it was premature under ORS 656.262(15). As noted above, that statute provides that, "[i]f the worker does not cooperate for an additional 30 days after the notice, the insurer or self-insured employer may deny the claim because of the worker's failure to cooperate." Here, the insurer issued its denial too soon. The ALJ also reasoned that claimant was entitled to attorney fees under ORS 656.386(1), but set the amount of the award at zero. On appeal to the board, the only issues concerned attorney fees. In its October 5, 2001, order, the board concluded that claimant was entitled to attorney fees under ORS 656.386(1) and set the amount of the award at $500.

Claimant requested reconsideration, arguing that the amount of the award should be increased to "at least $1,500."[3] In his letter to the board, claimant's attorney asserted that (1) generally, the minimum fee for prevailing over a denial is $2,500; (2) "[t]he amount of work trying this denial was essentially the amount of work that goes into any

---

[2] At the April 26 hearing, claimant's attorney identified the issues as the "denial orders" of January 12 and February 1. After SAIF's attorney noted that claimant had not appealed the February 1 denial, claimant's attorney stated that, "if it hasn't been appealed, it's appealed now." SAIF's attorney argued to the administrative law judge (ALJ) that claimant had not timely appealed the denial and that, because claimant had not requested an expedited hearing, the hearings division lacked jurisdiction under *SAIF v. Dubose*, 166 Or App 642, 999 P2d 529 (2000), *rev'd*, 335 Or 579, 74 P3d 1072 (2003). In *Dubose*, we had held that an ALJ had no authority to set aside a noncooperation denial because the claimant failed to request an expedited hearing as required by ORS 656.262(15). 166 Or App at 650. Before the board, SAIF again argued that claimant had not timely appealed the denial.

After oral argument in this case, the Supreme Court issued its opinion in *SAIF v. Dubose*, 335 Or 579, 74 P3d 1072 (2003). The Supreme Court reversed, holding that ORS 656.262(15) does not require that a claimant request an expedited hearing. *Id.* at 588. On review to this court, SAIF does not argue that claimant did not request a hearing nor does it argue that claimant did not timely appeal the denial. Accordingly, we do not consider those issues.

[3] Because claimant requested reconsideration, the board withdrew its October 5 order.

denial"; (3) this case was unique and fairly complex and "required a strong grasp of workers['] compensation law"; (4) he and claimant's trial counsel were experienced; (5) he and trial counsel had prehearing discussions concerning the case; and (6) "[i]t is now impossible to do the amount of work that we did on this case with the level of expertise provided, accept such a fee, and hope to keep the doors open." The record does not contain a statement of services from claimant's attorney that indicates the number of hours spent working on the case and the hourly rate of the attorneys involved.

In its response to the board, SAIF asserted that, even though it was not conceding that claimant was entitled to attorney fees, the $500 award was reasonable. SAIF argued that the $500 award was reasonable, because claimant's attorney "present[ed] no evidence regarding the time spent only on the denial issue." Citing to various portions of the administrative record, SAIF contends that it is unlikely that claimant's attorney spent any time on the denial issue and that, because the ALJ applied the law on his own to determine that the denial was premature and claimant's attorney did not raise the premature denial issue, the fee should be minimal. Finally, in its response, SAIF indicated that the issue on which claimant prevailed was not complex and that, based on the other factors that the board must consider, there should be no increase in the $500 award.

In its order on reconsideration, the board said, "[A]s modified herein, we adhere to and republish the Board's October 5, 2001[,] order." In the order on reconsideration, the board also awarded claimant $1,200 in attorney fees. The board explained its reasons for the award:

"On reconsideration, based on the following reasoning, we find that $1,200 is a reasonable attorney fee under the facts of this case. The 'non-cooperation' denial issue was of average complexity. Although claimant did not prevail over the Department's suspension order, he did prevail over the 'non-cooperation' denial; therefore, he is entitled to a reasonable fee for prevailing over the denial. Furthermore, although the ALJ set aside SAIF's 'non-cooperation' denial based on a theory not raised by claimant, claimant advocated that the 'non-cooperation' denial was void. By appealing the denial and advocating that it was void, claimant's

attorney's efforts ultimately resulted in the denial being set aside.

"The nature of the proceeding, a hearing before an ALJ, is common under workers' compensation law. The hearing record consisted of ten exhibits, two of which were submitted by claimant. The hearing transcript was 57 pages long, with three witnesses testifying—claimant and his mother testified on claimant's behalf and SAIF's claims adjuster testified on SAIF's behalf. The value of the interest involved and the benefit secured is average.

"The attorneys on both sides are skilled. Based on SAIF's challenge to the claim, there was a risk that the attorney's efforts may go uncompensated. Finally, no frivolous issues or defenses were asserted.

"After considering these factors, we conclude that a reasonable fee for claimant's attorney's services at hearing regarding the 'non-cooperation' denial is $1,200, payable by SAIF. In reaching this conclusion, we have particularly considered the complexity of the issue, the value of the interest involved, and the risk that claimant's counsel might go uncompensated."

(Citations omitted.) SAIF did not file objections with the board concerning the amount of the fee awarded on reconsideration.

In its first assignment of error on review to this court, SAIF asserts that the board erred in concluding that claimant is entitled to attorney fees under ORS 656.386(1) because a noncooperation denial is not a "denied claim" as that term is defined in ORS 656.386(1)(b)(A). SAIF argues:

"A non-cooperation denial is not a 'denial' for purposes of ORS 656.386(1). A 'denied claim' within the meaning of ORS 656.386(1) is a claim for compensation that an insurer or self-insured employer 'refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable or otherwise does not give rise to an entitlement to any compensation.' A non-cooperation denial does not deny compensability or otherwise assert that the claimant is not entitled to compensation on his or her claim. Rather, it is a denial that the claimant has cooperated with the employer's investigation of the claim. Under ORS 656.262(15), if a non-cooperation denial is set

aside, then the claim is remanded to the insurer or self-insured employer 'to accept or deny the claim.' Accordingly, a non-cooperation denial is not the kind of denial contemplated by ORS 656.386(1)."

The pertinent statute here, ORS 656.386(1), provides, in relevant part:

"(a) In all cases involving denied claims where a claimant finally prevails against the denial in an appeal to the Court of Appeals or petition for review to the Supreme Court, the court shall allow a reasonable attorney fee to the claimant's attorney. In such cases involving *denied claims* where the claimant prevails finally in a hearing before an Administrative Law Judge or in a review by the Workers' Compensation Board, then the Administrative Law Judge or board shall allow a reasonable attorney fee. In such cases involving denied claims where an attorney is instrumental in obtaining a rescission of the denial prior to a decision by the Administrative Law Judge, a reasonable attorney fee shall be allowed.

"(b) For purposes of this section, a 'denied claim' is:

"(A) A claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable or *otherwise does not give rise to an entitlement to any compensation*[.]"

(Emphasis added.)

In this case, SAIF unquestionably denied claimant's claim. As discussed above, SAIF issued its denial pursuant to ORS 656.262(15). ORS 656.262(15) provides that, when a claimant fails to cooperate for an additional 30 days after the notice of suspension, the insurer has two alternatives: it may deny the claim or it may allow the suspension of compensation to remain in effect. In this case, SAIF chose to deny the claim. As noted above, it expressly stated, "[W]e deny your claim."

■   The critical question here is whether SAIF's denial, which was based on claimant's failure to cooperate, is a "denied claim" as that term has been defined in ORS 656.386(1)(b)(A). The board concluded that it was and articulately explained:

"[A]lthough the 'non-cooperation' denial also stated that it was not a denial on the merits, that statement does not take it out of the realm of a 'denied claim' under ORS 656.386(1)(b)(A). As quoted above, ORS 656.386(1)(b)(A) defines a 'denied claim' in terms of a carrier's refusal to pay compensation on a claim either on the grounds that it is not compensable on the merits or on the grounds that it 'otherwise does not give rise to an entitlement to any compensation.' SAIF's 'non-cooperation' denial falls within the latter category. In other words, by issuing the 'non-cooperation' denial, SAIF was refusing to pay compensation on claimant's back injury claim on the grounds that he failed to cooperate with its investigation of his claim.

"In addition, as quoted above, SAIF stated that it was denying claimant's claim pursuant to ORS 656.262(15), which provides that if a worker does not cooperate for an additional 30 days after the Director's notice, the carrier 'may deny the claim because of the worker's failure to cooperate.' The statute also provides that, after issuance of a 'non-cooperation' denial, certain requirements must be met by the worker or the worker will not be granted a hearing on the merits of the claim and 'the worker's claim for injury shall remain denied.' ORS 656.262(15). *Thus, if the 'non-cooperation' denial is not set aside, it becomes a final denial of claimant's claim for injury.*

"Given all of these factors, we find that SAIF's 'non-cooperation' denial represented a 'denied claim' under ORS 656.386(1)(b)(A). Furthermore, because the ALJ found that the 'non-cooperation' denial was void (a decision that has not been contested on review) *claimant finally prevailed against the denial at hearing.* Therefore, claimant is entitled to a reasonable assessed attorney fee under ORS 656.386(1)."

(Footnote omitted; emphasis added.)

We agree with the board's understanding of the statute. For the reasons that the board explained, SAIF's action comes within the plain language of the definition of a denied claim in ORS 656.386(1)(b)(A).[4] Further, because claimant succeeded in overturning this denial in a hearing before the

---

[4] On review, SAIF also argues that, because the noncooperation denial was void, it cannot give rise to a fee under ORS 656.386(1). Because SAIF did not preserve that issue, we do not consider it.

ALJ, as the statute requires, claimant finally prevailed on a denied claim. Accordingly, under the statute, claimant is entitled to attorney fees.

The dissent understands the statute differently. It reasons that a noncooperation denial is not a denied claim within the definition in ORS 656.386(1)(b)(A). We do not find the dissent's reasoning persuasive. The principal reason that we find it unpersuasive is that it is inconsistent with the text of the definition of a "denied claim," which includes "a claim for compensation which an insurer * * * refuses to pay on the express ground that the injury or condition for which compensation is claimed * * * otherwise does not give rise to an entitlement to any compensation[.]" ORS 656.386(1)(b)(A). According to the dissent, the definition of a "denied claim" includes "denials that are based on a lack of compensability and those denials that are based on a lack of entitlement to compensation." 192 Or App at 528 (Edmonds, J., dissenting). The dissent reasons that denials based on lack of entitlement "include situations where the injury arguably occurs within the course and scope of employment but the claim is not compensable for other reasons." *Id.* at 525 (Edmonds, J., dissenting). The dissent explains that "[a]n example of when a work-related injury or condition is not compensable for another reason is when it is not the major contributing cause of a consequential condition, ORS 656.005(7)(a)(A), or when it is not the major contributing cause of a combined condition, ORS 656.005(7)(a)(B)." *Id.* (Edmonds, J., dissenting). As another example, the dissent refers to denials based on a lack of responsibility under ORS 656.307 and ORS 656.308 for which "a worker may not be entitled to compensation from a particular employer even though the injury or condition is determined to be compensable." *Id.* (Edmonds, J., dissenting).

As support for its position, the dissent points to the 1995 amendments to ORS 656.005(7)(a)(B) and concludes that

"[t]he use of the word 'otherwise' in the amendments to ORS 656.005(7)(a)(B) is illustrative of how the legislature used the word 'otherwise' in chapter 332 to create the structure of when an employer is responsible and when an

employer is not responsible for a work-related injury or condition. ORS 656.005(7)(a)(B) is an example of that kind of structure. An employer is responsible for a combined work-related and preexisting condition only when the work-related injury or condition is the major contributing cause of the combined condition. Otherwise, an employer has no liability under such circumstances for what was initially a work-related injury or condition."

*Id.* at 531-32 (Edmonds, J., dissenting). It follows, according to the dissent, that "[t]he version of ORS 656.386(1) applicable to this case tracks the above language added in 1995." *Id.* at 533 (Edmonds, J., dissenting). In conclusion, the dissent states that "[a] denial based on lack of cooperation cannot logically fall into either classification of a 'denied claim' for purposes of ORS 656.386(1) because a claimant does not finally prevail on the issue of compensability or on an issue giving rise to an entitlement to compensation when he or she overcomes a denial based on lack of cooperation." *Id.* at 534 n 5 (Edmonds, J., dissenting).

There are two problems with the dissent's reasoning. First, as we understand the dissent's position, it views ORS 656.005(7)(a)(B), the statute governing the compensability of a combined condition, as somehow limiting the entitlement to compensation for an "otherwise compensable injury." However, ORS 656.005(7)(a)(B) governs the compensability of a combined condition. It does not function as a limit on the ability to obtain compensation for an "otherwise compensable injury." Pursuant to ORS 656.005(7)(a)(B), if an "otherwise compensable injury" is not the major contributing cause of the disability of the combined condition or the need for treatment of the combined condition, the combined condition *is not compensable.* In other words, the claim for a combined condition would be denied on the ground that the condition *is not compensable* and not on the ground that it otherwise does not give rise to an entitlement to any compensation. That has been the longstanding understanding of ORS 656.005(7)(a)(B).[5] The dissent's reading of ORS

---

[5] Contrary to the dissent's understanding, we are not asserting that the dissent is changing the standard for the compensability of a combined condition. Rather, as explained above, our point is that, as the case law demonstrates, when a compensable injury combines with a preexisting condition but is not the major contributing cause of the combined condition, the combined condition is not

656.005(7)(a)(B) and ORS 656.386(1)(b)(A) is a reading that is inconsistent with the long-standing interpretation of the statute governing the compensability of a combined condition, ORS 656.005(7)(a)(B). For those reasons, we disagree that the 1995 amendments to other provisions in ORS chapter 656 require the dissent's interpretation of ORS 656.386(1).

Second, and more fundamentally, even though the dissent has attempted to identify types of denials based on the ground that the injury or condition "otherwise does not give rise to an entitlement to any compensation," those examples may not necessarily be the only types of denials that are encompassed within the definition. As discussed above, the noncooperation denial at issue in this case clearly was not issued on the ground that the injury was not compensable but on the ground that the injury or condition "otherwise does not give rise to an entitlement to any compensation."

The dissent also argues that claimant is not entitled to attorney fees because he has not finally prevailed on the issue of compensability. Although SAIF does not cite *Greenslitt v. City of Lake Oswego*, 305 Or 530, 754 P2d 570 (1988), in its brief on review, the dissent relies on that decision in concluding that claimant is not entitled to attorney fees under ORS 656.386(1). In *Greenslitt*, the court held that, in order to be entitled to attorney fees under ORS 656.386(1),

---

compensable and would be denied on that basis. *See Schuler v. Beaverton School District No. 48J*, 334 Or 290, 296, 48 P3d 820 (2002) (reasoning that, with regard to the application of ORS 656.005(7)(a)(B), "[t]he burden is on claimant to show that her injury is compensable. ORS 656.266. To show that an 'otherwise compensable injury is * * * the major contributing cause of the need for treatment of the combined condition,' a claimant must show that the otherwise compensable injury contributed more to the need for treatment than all other causes combined" (omission in original)); *Birrer v. Principal Financial Group*, 172 Or App 654, 658 n 2, 19 P3d 972 (2001) ("In order for a combined condition *to be compensable*, the work-related injury must be the major contributing cause of the current condition." (Emphasis added.)); *Bailey v. Reynolds Metals*, 153 Or App 498, 503, 959 P2d 84, *rev den*, 327 Or 432 (1998) ("[T]he combined condition is work related if the work-related injury is its major contributing cause."); *see also Errand v. Cascade Steel Rolling Mills, Inc.*, 320 Or 509, 518-19, 888 P2d 544 (1995) (in discussing the concept of compensable injury under a prior version of ORS 656.005(7), the court reasoned that, "unless the major contributing cause standard is satisfied, consequential conditions (subparagraph (A)) and resultant conditions (subparagraph (B)) *are not 'compensable injuries'*" and that in ORS 656.005(7)(a)(A), the legislature "is *defining* a compensable injury not merely announcing further conditions under which a compensable injury will be paid" (first emphasis added; second emphasis in original)).

a claimant must finally prevail on the *issue of compensation*. In its analysis, the dissent treats *Greenslitt* as context—*i.e.*, a prior judicial construction of the same or similar statutory language. The dissent reasons that, even though claimant was successful in having SAIF's denial of claimant's claim for compensation set aside, SAIF will now be required to process the claim, which does not necessarily mean that claimant will be awarded compensation. Accordingly, the dissent holds that claimant has not finally prevailed on the issue of compensability and, thus, is not entitled to attorney fees under ORS 656.386(1).

The dissent's reliance on *Greenslitt* is misplaced. First, the issue presented in *Greenslitt* was different from the issue here. That case involved a question of jurisdiction to determine attorney fees between the circuit court and the board. Second, because the definition of a denied claim that is at issue in this case had not been enacted by the legislature, the court in *Greenslitt* did not interpret that definition.[6] The legislature significantly amended the language of ORS 656.386 after *Greenslitt* was decided. ORS 656.386(1) (1987), which was cited in *Greenslitt*, provided:

> "In all cases involving accidental injuries where a claimant finally prevails in an appeal to the Court of Appeals or petition for review to the Supreme Court from an order or decision denying the claim for compensation, the court shall allow a reasonable attorney fee to the claimant's attorney. In such rejected cases where the claimant prevails finally in a hearing before the referee or in a review by the board itself, then the referee or board shall allow a reasonable attorney fee. In the event a dispute arises as to the amount allowed by the referee or board or appellate court, that amount shall be settled as provided for in ORS 656.388(2). Attorney fees provided for in this section shall be paid by the insurer or self-insured employer."

In 1995, the legislature substantially amended ORS 656.386. Or Laws 1995, ch 332, § 43. Significantly, the legislature deleted the language of the statute that was interpreted in *Greenslitt*.[7] In particular, the legislature deleted

---

[6] Moreover, even if that definition had been in effect, SAIF apparently denied the claim in *Greenslitt* on the express ground that it was not compensable.

[7] Or Laws 1995, ch 332, § 43 provides:

the language that a claimant must finally prevail "from an order or decision denying the claim for compensation." Further, the legislature replaced the deleted language with new language, including the term "denied claim" and including a specific definition of a "denied claim." As discussed above, that definition of a denied claim includes not only a denial on the ground that a condition or injury is not compensable but also a denial on the ground that the injury or condition "otherwise does not give rise to an entitlement to any compensation." ORS 656.386(1)(b)(A). SAIF's noncooperation

---

"ORS 656.386 is amended to read:

"656.386. (1) [*In all cases involving accidental injuries where a claimant finally prevails in an appeal to the Court of Appeals or petition for review to the Supreme Court from an order or decision denying the claim for compensation, the court shall allow a reasonable attorney fee to the claimant's attorney. In such rejected cases where the claimant prevails finally in a hearing before the referee or in a review by the board itself, then the referee or board shall allow a reasonable attorney fee. If an attorney is instrumental in obtaining compensation for a claimant and a hearing by the referee is not held, a reasonable attorney fee shall be allowed. Attorney fees provided for in this section shall be paid by the insurer or self-insured employer.*]

"[*(2) In all other cases attorney fees shall continue to be paid from the claimant's award of compensation except as otherwise provided in ORS 656.382.*] In all cases involving denied claims where a claimant finally prevails against the denial in an appeal to the Court of Appeals or petition for review to the Supreme Court, the court shall allow a reasonable attorney fee to the claimant's attorney. In such cases involving denied claims where the claimant prevails finally in a hearing before an Administrative Law Judge or in a review by the Workers' Compensation Board, then the Administrative Law Judge or board shall allow a reasonable attorney fee. In such cases involving denied claims where an attorney is instrumental in obtaining a rescission of the denial prior to a decision by the Administrative Law Judge, a reasonable attorney fee shall be allowed. For purposes of this section, a 'denied claim' is a claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable or otherwise does not give rise to an entitlement to any compensation. A denied claim shall not be presumed or implied from an insurer's or self-insured employer's failure to pay compensation for a previously accepted injury or condition in timely fashion. Attorney fees provided for in this subsection shall be paid by the insurer or self-insured employer.

"(2) In all other cases, attorney fees shall be paid from the increase in the claimant's compensation, if any, except as otherwise expressly provided in this chapter."

The legislature deleted the italicized language in brackets and replaced it with the language in boldface.

denial in this case was a denied claim under the new definition. Contrary to the dissent's assertion, *Greenslitt* is no longer persuasive authority because the statutory language that the Supreme Court interpreted in that case did not include the new definition of a denied claim.[8] The addition of the definition is significant because, under the plain language of the current statute, a claimant is entitled to attorney fees if he or she finally prevails at a hearing before an ALJ or review to the board against a denied claim as that term is specifically defined in the statute.

As the board explained, because the noncooperation denial was set aside by the ALJ and that decision was not challenged on appeal to the board, claimant finally prevailed against the noncooperation denial at hearing. The board concluded:

> "As explained above, the 'non-cooperation' denial is a 'denied claim' under ORS 656.386(1); *i.e.*, it is a 'claim for compensation' that SAIF refused to pay on the ground that it 'otherwise does not give rise to an entitlement to any compensation.' In order to be entitled to an attorney fee under ORS 656.386(1), the statute requires that the claimant prevail against a 'denied claim,' as that term is defined in the statute. Here, claimant has done that."

For all of the above reasons, we conclude that the board did not err in awarding claimant attorney fees.

In its second assignment of error, SAIF asserts that, even if claimant is entitled to attorney fees under ORS 656.386(1), the board's attorney fee award must be vacated because "[t]he Board's explanation for its fee award of $1,200 is inadequate for judicial review under the standard set by the Supreme Court[.]"[9] Specifically, SAIF asserts:

---

[8] The dissent states, "My research of the legislative history of the 1995 amendments does not reveal any discussion by the legislature that would suggest an intent to legislatively overrule the holding in *Greenslitt*." 192 Or App at 533 n 4 (Edmonds, J., dissenting). However, the lack of legislative history on the issue of whether the legislature intended to overrule a Supreme Court decision cannot be viewed as evidence that the legislature did not intend to effect a change in the law, particularly where the legislature significantly amended the wording of the statute that the court had interpreted.

[9] SAIF refers to two Supreme Court cases that explain the standard. *See Schoch v. Leupold & Stevens*, 325 Or 112, 934 P2d 410 (1997) (holding that, where the claimant submitted an affidavit and a summary of services detailing the

"The Board cited the 'time devoted to the case' on the non-cooperation denial issue as a factor in its award, and that factor was disputed. Claimant submitted no statement of services. Under these circumstances, it behooved the Board to make a finding regarding how many hours it thought claimant's attorney expended on the non-cooperation denial issue. Absent such a finding, it is impossible to know what kind of hourly rate the Board considered reasonable or how the other factors it recited affected its fee award."

In determining whether the board's explanation is adequate for judicial review, it is helpful to compare *Schoch v. Leupold & Stevens*, 325 Or 112, 934 P2d 410 (1997), and *SAIF v. Bacon*, 160 Or App 596, 982 P2d 40 (1999). In *Schoch*, the board awarded the claimant attorney fees of $3,000. The claimant requested reconsideration and submitted an affidavit and a statement for services totaling $19,897.50. In its order on reconsideration, the board adhered to its original decision. We affirmed without opinion, and the Supreme Court reversed. In holding that the board's explanation was inadequate for judicial review, the Supreme Court noted the specific documentation submitted by the claimant on reconsideration and the great discrepancy between the requested award and the board's actual award.

On remand, claimant reduced the amount of the requested fee. The board offered a more detailed explanation, including a statement that it was not questioning claimant's attorney's representations about the amount of time expended in the case. *Schoch v. Leupold & Stevens*, 162 Or App 242, 247-48, 987 P2d 13 (1999). Ultimately, the board adhered to its $3,000 award. Claimant sought review in this court. In describing the reason that the Supreme Court had remanded the case to the board, we said that "[i]t was unclear to the court whether the Board had thought that the hourly rate was too high, whether it thought that the time spent on

number of hours her attorney devoted to the case, there was a great discrepancy between the attorney fees that were requested and the workers' compensation board's award, and the factors cited could have supported an award for the full amount of the requested award, the board's explanation was inadequate for review); *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 189, 957 P2d 1200 (1998) (reasoning that "[f]indings are necessary to assist the appellate court in carrying out a meaningful review of the competing arguments of the parties and the attorney fee decision below").

the case was excessive, or whether the Board had discounted claimant's fee request because of the fees awarded in the parallel proceeding." *Id.* at 246-47. We concluded that the board's more detailed explanation on remand was also inadequate for judicial review. Specifically, we noted the following inadequacy in the board's explanation:

"The Board's opinion on remand discusses, for example, the nature of the work claimant's counsel performed before the Board and the complexity of the issues counsel addressed. The opinion does not go on to say, however, whether the hours claimant's counsel worked were reasonable or unreasonable in light of the nature and complexity of the work he did. The intermediate step that is missing from the Board's opinion is the reasoning that led it from the factors it considered to the amount of the attorney fee it awarded."

*Id.* at 249. In other words, in *Schoch*, the inadequacy of the board's explanation arose from the great discrepancy between the claimant's specific documentation of her attorney's services and the board's actual award. To be sufficient for judicial review, the board had to explain the discrepancy.

In *Bacon*, the ALJ awarded claimant attorney fees of $2,000. Although the claimant had not submitted a statement of services, the ALJ relied on the record and the nature of the issues to determine the amount of a reasonable fee. Neither party requested reconsideration. The claimant did not submit "evidence to show that the ALJ's award did not reflect the hours his attorney had in fact worked or the value of his attorney's services." *Bacon*, 160 Or App at 598. SAIF "did not submit any affidavits or other evidence on reconsideration to show that the fee the ALJ had awarded was too high." *Id.* SAIF then appealed to the board and challenged the ALJ's fee award. SAIF argued that the claimant's attorney had submitted no evidence concerning the amount of time spent that would justify the award, the fee was excessive because there was no explanation of how the ALJ determined the amount of the award, and the claimant should be required to submit a statement of services. Ultimately, the board affirmed the ALJ's $2,000 award.

In *Bacon*, in affirming the board, we explained:

"Before turning to the issue SAIF raises on review, we note what is not at issue in this case. SAIF does not argue on review that the Board had no basis for awarding claimant attorney fees because claimant had not submitted a statement of services to either the ALJ or the Board. Rather, SAIF's argument assumes that the ALJ or the Board legitimately may infer the amount of time that the attorney reasonably expended on the case and the reasonable value of his or her services from the extent of the proceedings and the nature of the issues litigated before the agency. SAIF also has not argued on review that the fees the ALJ and the Board awarded in this case are unreasonable. Finally, SAIF did not submit any documentation to either the ALJ or the Board to show that those fees were too high. Accordingly, the issue on review is not whether the Board's order was sufficient to resolve a specific objection to the agency's fee award. *Compare Schoch*, 325 Or at 118-20 (addressing that issue). Rather, the issue, as SAIF frames it in its brief, is whether the Board's explanation is sufficient in the absence of any specific objection to the fee award.

"* * * * *

"The reasoning in *Schoch* makes clear that its holding is driven in large part by the need for meaningful appellate review. When, however, neither the claimant nor the employer objects to the reasonableness of the fee award, the need to ensure meaningful appellate review is absent. *See McCarthy [v. Oregon Freeze Dry, Inc.]*, 327 Or [185, 189, 957 P2d 1200 (1998)]. Although general administrative law principles still require the Board to explain the basis for its fee award, the need for specificity diminishes in the absence of any substantive objection to the fee award itself. Moreover, when, as in this case, neither the claimant nor the employer submits any evidence of either the hours that were reasonably expended or the value of an attorney's services, we cannot say that the agency erred in not going into greater detail than it did here. We emphasize that if SAIF or claimant had submitted specific evidence challenging either the ALJ's or the Board's fee award, as the claimant did in *Schoch*, the Board's explanation would have to comply with the standard in *Schoch*."

*Bacon*, 160 Or App at 600-04; (footnote omitted).

In this case, the board's explanation for its award is similar to the board's explanation in *Schoch* after remand by the Supreme Court; however, this case is distinguishable from *Schoch* and similar to *Bacon*, because there was no specific objection to the attorney fee award. The record does not indicate that claimant submitted a statement of services.[10] SAIF did not argue to the board and does not argue on review in this court that there is no basis for awarding attorney fees without a statement of services. On reconsideration to the board, neither party submitted documentation to demonstrate that the $500 award was or was not reasonable. Additionally, SAIF presented no documentation that an award greater than $500 would be unreasonable. Instead, the parties submitted argument concerning whether the $500 award should be increased. Both claimant's and SAIF's arguments assumed that the board could legitimately infer the reasonable value of claimant's attorney's services from the record of proceedings and the nature of the litigation. SAIF did not file objections to the board's $1,200 award in its order on reconsideration. Thus, as in *Bacon*, there was no specific objection concerning the attorney fee award.

■    The gravamen of SAIF's argument on review is that, because the board cited time devoted to the case "as a factor in its award," the board should have made "a finding regarding how many hours it thought claimant's attorney expended on the non-cooperation denial issue" and that, without that finding, "it is impossible to know what kind of hourly rate the Board considered reasonable or how the other factors it recited affected its fee award." However, although SAIF

---

[10] As we indicated in *Bacon*,

"[b]y not requiring the party seeking fees to submit a statement of services as a prerequisite for receiving them, the Board has effectively shifted the burden to the party opposing the fee request to file specific objections.if it believes that the amount of the fee awarded is excessive. At least before this court, however, SAIF has not challenged that practice. SAIF has not explained why the Board's practice is inconsistent with either its rule or its governing statute, *see* Or Laws 1990, ch 2, § 30 (deleting statutory requirement that a party submit a written statement of services in support of its fee claim), and we do not have the benefit of the Board's explanation of its practice before us. We accordingly leave that issue for another day when it has been squarely presented and briefed."

160 Or App at 603 n 5.

asserts that the board cited time devoted to the case "as a factor in its award," the board, in its order on reconsideration, did not purport to rely on that factor. Additionally, we are not persuaded by SAIF's argument that the board should have made findings concerning the amount of time that it thought claimant's attorneys worked on the case. Here, not only was no documentation submitted concerning the number of hours that claimant's attorneys expended or the value of those attorneys' services, but the board's rule concerning attorney fees, OAR 438-015-0010, does not expressly require that the board make a finding about the time an attorney devoted to a case.[11] As we said in *Bacon*, under those circumstances, "we cannot say that the agency erred in not going into greater detail than it did here." 160 Or App at 604. For all of those reasons, under the particular circumstances in this case, the board's explanation was adequate for judicial review, and the attorney fee award is affirmed.

In sum, we hold that claimant finally prevailed on a denied claim under ORS 656.386(1) and was entitled to attorney fees. Additionally, consistently with *Bacon*, the board adequately explained its $1,200 attorney fee award.

Affirmed.

**EDMONDS, J.,** dissenting.

The issue in this case is whether claimant is entitled to an attorney fee under ORS 656.386(1) when he was

---

[11] OAR 438-015-0010(4) provides:

"In any case where an Administrative Law Judge or the Board is required to determine a reasonable attorney fee, the following factors shall be considered:

"(a) The time devoted to the case;

"(b) The complexity of the issue(s) involved;

"(c) The value of the interest involved;

"(d) The skill of the attorneys;

"(e) The nature of the proceedings;

"(f) The benefit secured for the represented party;

"(g) The risk in a particular case that an attorney's efforts may go uncompensated; and

"(h) The assertion of frivolous issues or defenses."

successful in overturning SAIF's denial for his alleged non-cooperation with the investigation of this claim while the claim was pending but before the claim has been finally determined to be compensable. The issue is one of statutory interpretation in which we seek to discern whether the legislature intended that attorney fees be awarded under those circumstances. We first examine the text and the context of the statute.

ORS 656.386(1) provides, in relevant part:

"(a)   In all cases involving denied claims where a claimant finally prevails against the denial in an appeal to the Court of Appeals or petition for review to the Supreme Court, the court shall allow a reasonable attorney fee to the claimant's attorney. In such cases involving denied claims where the claimant prevails finally in a hearing before an Administrative Law Judge or in a review by the Workers' Compensation Board, then the Administrative Law Judge or board shall allow a reasonable attorney fee. In such cases involving denied claims where an attorney is instrumental in obtaining a rescission of the denial prior to a decision by the Administrative Law Judge, a reasonable attorney fee shall be allowed.

"(b)   For purposes of this section, a 'denied claim' is:

"(A)   A claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable or otherwise does not give rise to an entitlement to any compensation."

Based on the above language, the majority holds that a "denied claim" within the meaning of the statute includes denials because of noncooperation by claimants. The majority adopts the Workers' Compensation Board's reasoning that a noncooperation denial is a "denied claim" because such a denial "otherwise does not give rise to an entitlement to any compensation" within the meaning of ORS 656.386(1)(b)(A). 192 Or App at 513. The effect of the majority's holding is that claimant is entitled to an attorney fee under the statute even though his claim has yet to be processed to determine its compensability and even though it may be eventually determined that his claim is not compensable or that the employer is not responsible for it.

The words "denied claim" in ORS 656.386(1) are not ambiguous when read in context with the other words of the Workers' Compensation Act. The key phrases in the statute are "[i]n such cases involving denied claims where the claimant finally prevails in a hearing," "[a] claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable," and "[a] claim for compensation which an insured or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed * * * otherwise does not give rise to an entitlement to any compensation." Some of the words in those phrases are defined in ORS 656.005, some have ordinary meanings, and some have a meaning as defined by ORS 656.386(1).

The word " '[c]laim' means a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge." ORS 656.005(6). A "compensable injury" is an injury "arising out of and in the course of employment * * * subject to the following limitations. * * *" ORS 656.005(7)(a). The limitations on compensability include situations where the injury arguably occurs within the course and scope of employment but the claim is not compensable for other reasons. An example of when a work-related injury or condition is not compensable for another reason is when it is not the major contributing cause of a consequential condition, ORS 656.005(7)(a)(A), or when it is not the major contributing cause of a combined condition, ORS 656.005(7)(a)(B). *See also* ORS 656.005(7)(b) (describing circumstances in which an otherwise compensable claim is noncompensable). In addition to the above kinds of limitations on compensation, there are also statutory limitations on compensability and on the responsibility for a compensable injury, even when the initial injury or condition is compensable. For instance, under ORS 656.273, an injured worker is entitled to additional compensation for a worsened condition resulting from the initial compensable injury only if the major contributing cause of the worsened condition is the injury or condition that occurred within the course and scope of employment. Additionally, a worker may not be entitled to

compensation from a particular employer even though the injury or condition is determined to be compensable. Those kinds of denials are based on a lack of responsibility for a compensable injury. *See, e.g.*, ORS 656.307; ORS 656.308.

All of the above statutes provide context for discerning the legislature's intent with regard to the language of ORS 656.386(1), the statute at issue in this case. In general, the statute authorizes the recovery of attorney fees after a worker has finally prevailed over the denial of a claim. The statute first tells us that, "[i]n such cases involving denied claims where the claimant finally prevails in a hearing before an Administrative Law Judge or in a review by the Workers Compensation Board," the claimant shall be allowed a reasonable attorney fee. That phrase constitutes the grant of authority for the award of attorney fees under the statute. The word "claims" in the phrase refers to claims as defined by ORS 656.005(6). A "claim" therefore is a "written request for compensation from a subject worker." The words "finally prevails in a hearing" when used with the word "claims" tell us that a claimant must prevail finally on a request for compensation. Prevailing temporarily in the processing of a claim where there is yet to be a decision on the merits regarding compensation does not satisfy the requirement of the statute. In fact, prevailing temporarily under such circumstances is the antithesis of prevailing "finally" on a request for compensation.

Also, the legislature chose to specifically define the words "denied claim" in the above phrase in ORS 656.386(1). The fact that the legislature chose to define those words with regard to the authority to grant attorney fees under the statute rather than to use them as they are ordinarily understood in the context of ORS 656.005(6) is of special significance. Because the word "claim" is statutorily defined and the word "denied," which modifies it, has an ordinary meaning, the fact that the legislature undertook to define those words especially for ORS 656.386(1) suggests strongly that the legislature did not intend those words to be understood in their generic sense nor intend that the denial of a claim for any reason fall within the rubric of the statute. If the legislature had intended the words "denied claim" to have their ordinary meaning, it would not have been necessary to promulgate special definitions for the purposes of the statute.

In giving the words "denied claim" in ORS 656.386(1) a specialized meaning for purposes of the statute, the legislature divided the universe of "denied claims" into two worlds.[1] First, a "denied claim" is defined as a claim on which the claimant prevails finally after the employer or self-insured employer refuses to pay on the express ground that the injury or condition is not compensable. ORS 656.005(7)(a)(A) defines a "compensable injury" in terms of work relatedness; that is, an injury must arise out of and in the course of employment to be compensable. Here, claimant does not contend that SAIF's noncooperation denial was based on a contention that his injury did not arise out of and in the course of his employment or that the denial was on the basis that the claim was not otherwise compensable.

The alternative definition of a "denied claim" for purposes of ORS 656.386(1) provides that a "denied claim" is a "claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed * * * otherwise does not give rise to an entitlement to any compensation." The key words in the phrase are "otherwise," "does not give rise to," and "entitlement." The word "otherwise" means "in a different way or manner." *Webster's Third New Int'l Dictionary* 1598 (unabridged ed 1993). The word operates in the sentence to differentiate the phrase that follows, "does not give rise to an entitlement to compensation," from the previous phrase regarding denials that are based on the lack of compensability. The creation of a defined category of "denied claims" separate from the category of denials based on lack of compensation is further evidence of an intent by the legislature to define "denied claims" in a way that does not embrace denials of claims for all kinds of reasons. In other words, the structure of the statute tells us that the legislature has undertaken to divide "denied claims" into two categories: those kinds of denied claims that fall into either of the alternative definitions of the statute trigger an award of attorney fees, while those kinds of denials that fall into neither of the prescribed categories do not give rise to an award of attorney fees.

---

[1] In that sense, ORS 656.386(1) tracks the conceptual framework found elsewhere in the Workers' Compensation Act where compensability and responsibility for otherwise compensable injuries are treated separately.

The focus of the second, alternative definition of a "denied claim" in the statute is on rulings that "give rise to an entitlement to compensation" rather than on compensability. ORS 656.386(1)(b)(A). The ordinary meaning of the words "give rise to" is to "bring about: PRODUCE, OCCASION." *Webster's* at 960. Similarly, the ordinary meaning of the word "entitlement" is "the condition of being entitled: RIGHT; *specif* : the right to benefits under the state employment-compensation laws or federal old-age and survivors insurance." *Id.* at 758.

When the above words are read with the remainder of the language in the statute, they communicate the following thoughts. First, a claimant must prevail finally on a denied claim. Second, the words "denied claim" have a limited meaning for purposes of ORS 656.386(1), as distinguished from a generic meaning. Third, those limitations include those denials that are based on a lack of compensability and those denials that are based on a lack of entitlement to compensation. Fourth, to be entitled to attorney fees under the second, alternative definition of a "denied claim" in the statute, a claimant must prevail finally in a manner that brings about, produces or occasions an *entitlement* to compensation. In the context of the Workers' Compensation Act, a clear example of prevailing finally over a denial that gives rise to an entitlement to compensation is when a denial of responsibility for a compensable injury is made under ORS 656.308 and is thereafter overcome by the claimant. In contrast, the overturning of a denial based on a lack of cooperation does not bring about an entitlement to compensation. Rather, it puts the claimant in the position of being able to litigate compensability and/or responsibility. A correct analysis based on the text and context of ORS 656.386(1) need go no further in this case. Claimant, who has yet to prevail on the merits of his claim has not finally prevailed over a denied claim in a way that gives rise to an entitlement to compensation.

The majority holds otherwise, but its position is not faithful to the language in the statute for a couple of reasons. First, the majority's decision permits a claimant to prevail over a noncooperation denial, be awarded attorney fees as a result, and then lose on the issue of compensability. In effect,

the majority must reason that when a claim for an allegedly compensable injury or condition sets in motion a sequence of interim procedural events that *could* lead to a determination of compensability or an entitlement to compensation, and when the claimant "finally prevails" regarding one of those interim events, then the claimant has prevailed finally within the meaning of the statute. But that interpretation does not give effect to the import of the words in the statute that the claimant must finally prevail on a request for compensation. Such a claimant has only temporarily prevailed in an interim proceeding during the pendency of the adjudication of the request for compensation. Second, the majority, in order for its interpretation to be correct, must construe the phrase "give rise to an entitlement to any compensation" as meaning that a claimant is entitled to attorney fees when he or she finally prevails in a hearing that *precedes* the determination of an entitlement to compensability. But, again, that interpretation is at odds with the ordinary meaning of the phrase, which requires a ruling that brings about or produces the final right to an "entitlement" to compensation.

There should be no doubt about the meaning of ORS 686.386(1) when the statutorily defined language in the statute is read with its words that have ordinary meaning. But if such doubt exists, the Supreme Court has previously interpreted the statute contrary to the majority's construction. When the Supreme Court interprets a statute, that interpretation becomes a part of the statute as if it were written into the law at the time of its enactment. *Holcomb v. Sunderland,* 321 Or 99, 105, 894 P2d 457 (1995). It follows that, unless a statute so interpreted is subsequently amended to change the meaning of the statute, the Supreme Court's interpretation remains viable and controlling.

In *Greenslitt v. City of Lake Oswego,* 305 Or 530, 533-34, 754 P2d 570 (1988), the Supreme Court considered an earlier version of ORS 686.386(1). In that case, SAIF initially denied the claimant's claim. At a hearing on SAIF's denial, the referee held that the claimant's claim was compensable, remanded the claim to SAIF for acceptance, and awarded the claimant attorney fees. SAIF timely requested that the board review the referee's order. The board reduced the award of attorney fees and otherwise affirmed the referee's order. The

Supreme Court, in considering the claimant's assertion that the board lacked authority to reduce the attorney fee award, reviewed the requirements of ORS 656.386(1):

> "(1) the claimant must initiate the hearing process by requesting review from an order or decision denying the claim; (2) the claimant must prevail *finally* on the issue of compensation * * *; and (3) the decision of the referee, board or court in which the claimant prevails finally must be from an earlier decision or order denying, rather than allowing, the claim for compensation."

*Greenslitt*, 305 Or at 533-34 (citing *Shoulders v. SAIF*, 300 Or 606, 611-12, 716 P2d 751 (1986)) (emphasis in *Greenslitt*). The court, clarifying the meaning of the second requirement, held that "[a] claimant 'prevails finally' before a forum if that forum holds in the claimant's favor on the issue of the claimant's right to workers' compensation and that determination is not appealed within the time allowed by statute." *Greenslitt*, 305 Or at 534. The court concluded that, because SAIF timely appealed the referee's ruling, the claimant had not yet finally prevailed, and the board therefore had authority to reduce the attorney fee award. In other words, the *Greenslitt* court interpreted the "finally prevail[ ]" language in ORS 656.386(1) to require that the claimant prevail on "the merits of his workers' compensation claim, leaving only attorney fees in dispute." *Id.* That interpretation continues to be in effect under the language of the present statute unless the legislature subsequently changed the statute to have a different meaning. Under the holding in *Greenslitt, claimant in this case has not "finally prevail[ed]" on the merits of his claim.*

*The majority argues, however, that Greenslitt* is no longer controlling authority because the legislature amended ORS 656.386(1) in 1995.[2] According to the majority, when the legislature undertook to define the words "denied claim" in the statute in 1995, that definition resulted in the *Greenslitt* court's holding being no longer applicable. But that assertion

---

[2] A survey of the overall trend of Oregon Laws 1995, chapter 332 creates doubt that the legislature intended to expand the scope of the existing law regarding the entitlement of claimants to attorney fees merely because a claimant prevailed in an interim proceeding. If anything, the legislature appeared to be aiming in the opposite direction.

is not supported by the structure or the import of the changes to the statute that were made in 1995.[3]

The 1995 amendments to ORS 656.386(1) were part of a major revision of the Workers' Compensation Act. Before referring to the specific revisions regarding ORS 656.386(1), it is informative to consider the structure of the amendments as a whole. For instance, the 1995 amendments also amended ORS 656.005(7)(a)(B). That amendment provided as follows:

> "(B) If [*a*] **an otherwise** compensable injury combines **at any time** with a preexisting [*disease or*] condition to cause or prolong disability or a need for treatment, the [*resultant*] **combined** condition is compensable only **if, so long as and** to the extent **that** the **otherwise** compensable injury is [*and remains*] the major contributing cause of the disability **of the combined condition** or **the major contributing cause of the** need for treatment **of the combined condition**."

Or Laws 1995, ch 332, § 1 (deletions in italics, new language in boldface). The use of the word "otherwise" in the amendments to ORS 656.005(7)(a)(B) is illustrative of how the legislature used the word "otherwise" in chapter 332 to create the structure of when an employer is responsible and when an employer is not responsible for a work-related injury or condition. ORS 656.005(7)(a)(B) is an example of that kind of

---

[3] The changes made by the 1995 amendment to ORS 656.386 appear as follows. Although the majority correctly notes that the legislature amended the statute by wholesale deletion and addition in 1995, the statute did not change as much as the majority suggests. Words present in both statutes are noted in plain text. Words present in the earlier version but not the current version of the statute are noted in italics. Additions to the statute made in 1995 are noted in boldface.

"In all cases involving [*accidental injuries*] **denied claims** where a claimant finally prevails **against the denial** in an appeal to the Court of Appeals or petition for review to the Supreme Court [*from an order or decision denying the claim for compensation*], the court shall allow a reasonable attorney fee to the claimant's attorney. * * * **For purposes of this section a 'denied claim' is a claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable or otherwise does not give rise to an entitled to any compensation. A denied claim shall not be presumed or implied from an insurer's or self-insured employer's failure to pay compensation for a previously accepted injury or condition in timely fashion**."

Or Laws 1995, ch 332, § 43.

structure. An employer is responsible for a combined work-related and preexisting condition only when the work-related injury or condition is the major contributing cause of the combined condition. Otherwise, an employer has no liability under such circumstances for what was initially a work-related injury or condition.

By undertaking to define specifically what constitutes a "denied claim" for purposes of ORS 656.386(1) in the 1995 amendments, it appears that the legislature followed a structure similar to the one it used by regarding employer liability for work-related injuries. The legislature divided work-related claims into classes of compensable and noncompensable claims for purposes of employer liability; it also divided "denied claims" for purposes of ORS 656.386(1) into classes of denied claims for which attorney fees may or may not be awarded. Employer liability for a "compensable" claim depends on the claimant finally prevailing on the issue of compensability and/or responsibility in a series of administrative and judicial review steps. Similarly, employer liability for attorney fees depends on the claimant, at the completion of the available procedural steps, finally prevailing over a denied claim (as defined). In other words, the common predicate for employer liability for compensable claims and for an award of attorney fees against an employer is the same throughout the amendments: the claimant must finally prevail. In light of the structure of the act as a whole, it makes sense that the legislature would not have intended for a claimant to recover attorney fees until the claimant had prevailed on the issue of the liability of the employer. To interpret the amendment in Oregon Laws 1995, chapter 332, section 43 to have changed the rule of *Greenslitt* and to have enlarged the entitlement to attorney fees to circumstances where the claimant has not finally prevailed on the issue of compensation is to ignore the structure of the 1995 amendments to the Workers' Compensation Act as a whole.

There is, however, another, less subtle reason why the majority's reliance on the 1995 amendments as an implicit repeal of the holding of the *Greenslitt* court is wrong. No language in the 1995 amendments to the statute changed the court's interpretation; rather, the legislature left intact the language in the statute that prompted the *Greenslitt*

court to conclude that a claimant must "finally prevail" on the merits of the claim before attorney fees could be awarded. Rather than deleting those words, the bill deleted the phrase, "[i]n all cases involving accidental injuries," and substituted in its place, the phrase, "[i]n all cases involving denied claims." Or Laws 1995, ch 332, § 43.[4] Under the prior statute, the recovery of attorney fees was authorized in "all cases involving accidental injuries where a claimant finally prevails * * * from an order or decision denying the claim for compensation." The phrase "from an order or decision denying the claim for compensation" in the prior statute operated *to identify the nature of the legal action* over which the claimant was required to prevail before attorney fees could be recovered. By adding to the statute the words "denied claims" and deleting the words "from an order or decision denying the claim for compensation" from the statute, the legislature continued to express its intention about the nature of the legal action that could trigger an award of attorney fees. Had the legislature done nothing more at that point, the argument that the legislature intended to change the statute as interpreted by the *Greenslitt* court would be more tenable, because the statute, as amended, could have applied to all denials. It could follow then that a decision on the merits of the claim was not a prerequisite to an award of attorney fees. But the legislature chose additionally to define the words "denied claims" in terms of compensability and entitlement to compensation. By narrowing the definition of a "denied claim" to rulings that determined the merits of a claim (compensability or entitlement to compensation), the legislature necessarily reiterated, in its own words, the interpretation previously given to the statute by the *Greenslitt* court. The majority fails to adequately explain why the legislature would have left the words "prevails finally" in the statute if it had actually intended to change the meaning of the statute as interpreted by the *Greenslitt* court.

The version of ORS 656.386(1) applicable to this case tracks the above language added in 1995. Under the current version of the statute, a claimant must "finally prevail[ ]"

---

[4] My research of the legislative history of the 1995 amendments does not reveal any discussion by the legislature that would suggest an intent to legislatively overrule the holding in *Greenslitt*.

over the denial of the claimant's request for compensation. To trigger liability for attorney fees, the overturned denial must have been on the basis that the claim was not compensable or on the basis that claimant was not otherwise entitled to compensation. Whether the statute is interpreted on its face or whether the *Greenslitt* court's interpretation is followed, the result is the same. A denial based on lack of cooperation with an investigation is not the kind of denial that brings about a decision on the merits of the claim. Claimant is not entitled to attorney fees unless he finally prevails on the merits.[5]

For those reasons, I dissent.

Linder and Schuman, JJ., join in this dissent.

---

[5] The majority says that, when a compensable injury combines with a preexisting condition but is not the major contributing cause of the combined condition, the combined condition is not compensable. 192 Or App at 514 n 5. I agree. But that observation, correct as it is, begs the question before us. The issue is whether the legislature intended a claimant to recover attorney fees before finally prevailing on the issue of compensability or on an issue that gives rise to an entitlement to compensation. If the majority means to say that the denial of a combined or consequential condition is the kind of denial that qualifies for the first category of "denied claims," rather than for the second category of denied claims, as defined by ORS 656.386(1), then, for the sake of argument, I agree. It could be that the legislature intended the first classification of denials in the statute to include denials based on the lack of work-relatedness as well as on limitations on compensability and the second class of denials to be based only on the lack of responsibility. I have found no legislative history that resolves that issue, but it makes no difference to the correct interpretation of the legislature's intent regarding the issue in this case. A denial based on lack of cooperation cannot logically fall into either classification of a "denied claim" for purposes of ORS 656.386(1) because a claimant does not finally prevail on the issue of compensability or on an issue giving rise to an entitlement to compensation when he or she overcomes a denial based on lack of cooperation.