Argued and submitted September 10, 2001, decision of Court of Appeals reversed and case remanded to Court of Appeals for further proceedings August 7, 2003

In the Matter of the Compensation of
Jodie M. Dubose, Claimant.

SAIF CORPORATION
and Evergreen Restaurant Group,
*Respondents on Review,*

*v.*

Jodie M. DUBOSE,
*Petitioner on Review.*

(WCB 97-01993; CA A103853; SC S47731)

74 P3d 1072

Edward J. Harri, Salem, argued the cause for petitioner on review. With him on the brief was James C. Egan, Albany.

Julene M. Quinn, Salem, argued the cause and filed the brief for respondents on review.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

RIGGS, J.

** Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

**RIGGS, J.**

In this workers' compensation case, SAIF Corporation (SAIF), the insurer, denied a claim for benefits because claimant had failed to cooperate with SAIF's investigation. Claimant requested a hearing, using the standardized form that the Workers' Compensation Board (board) provides for such requests, but she did not check a box on the hearing request form to indicate that SAIF had denied her claim for "worker noncooperation." Instead, claimant checked the box to indicate that SAIF had denied her claim on "compensability complete claim denial" grounds. At the hearing, SAIF argued that claimant was not entitled to a hearing on the denial of her claim because she had failed to request an "expedited hearing" on the denial of her claim on noncooperation grounds. The administrative law judge (ALJ) and, later, the board held that claimant had failed to attend an insurer medical examination (IME),[1] but that her failure to attend was for reasons beyond her control. The Court of Appeals reversed, holding that claimant had been required to request an "expedited hearing" and that, by checking the incorrect box on the hearing request form, she had failed to do so. *SAIF v. Dubose*, 166 Or App 642, 999 P2d 529 (2000). For the reasons that follow, we reverse the decision of the Court of Appeals and remand to that court for further proceedings.

We take the following undisputed facts from the opinion of the Court of Appeals and the record:

"Claimant filed a claim for workers' compensation benefits based on a diagnosis of carpal tunnel syndrome and situational anxiety, the cause of which she attributed to her work as an assistant manager of a McDonald's restaurant. SAIF scheduled claimant for an independent medical examination (IME), notified her of the date, time, and place of the IME, and reminded claimant of her obligation to

---

[1] The ALJ and the board referred to the procedure as an "independent" medical examination. However, we refer to the procedure described in ORS 656.325(1)(a) as an insurer medical examination, because the Director of the Department of Consumer and Business Services used that designation in OAR 436-010-0265, the administrative rule that establishes procedures for medical examinations that an insurer requires under ORS 656.325(1)(a).

cooperate and assist in the investigation of her claim. *See* ORS 656.262(14). Claimant did not attend the IME. On January 24, 1997, the Department of Consumer and Business Services (DCBS) notified claimant that it would be suspending her compensation benefits for 'noncooperation' based on her failure to attend the IME. DCBS later issued an order suspending benefits and allowing SAIF to deny the claim unless claimant cooperated within 30 days of the January 24 notice. Claimant did not appeal that order. Nor did she communicate with DCBS or SAIF during the 30-day period. SAIF denied the claim on February 25, 1997, citing claimant's failure to cooperate as the sole reason for the denial.

"On March 5, 1997, claimant requested a hearing on SAIF's denial by filling out a standardized form provided by the Board. That form stated: 'A hearing is requested for the reason(s) checked below.' Claimant checked 'DENIAL' and, as the reason for the denial, marked 'Compensability—complete claim denial.' Claimant did not check the box identifying a denial based on 'Worker noncooperation.'

"A hearing was scheduled for June 2, 1997, almost three months after claimant's hearing request. At the beginning of the hearing, the ALJ identified the issues before it as 'compensability of the claim and a carrier-paid fee if claimant prevails.' SAIF clarified that its denial was not based on noncompensability but was based, instead, on claimant's noncooperation. SAIF argued that claimant should not be allowed to proceed because she had failed to request an expedited hearing as required by ORS 656.262(15), which provides, in part:

> " '[T]he insurer * * * may deny the claim because of the worker's failure to cooperate. * * * After such a denial, *the worker shall not be granted a hearing or other proceeding under this chapter on the merits of the claim unless the worker first requests and establishes at an expedited hearing under ORS 656.291* that the worker fully and completely cooperated with the investigation, that the worker failed to cooperate for reasons beyond the worker's control or that the investigative demands were unreasonable.'

"(Emphasis added.) The ALJ did not consider claimant's failure to request an expedited hearing to 'be of significance' and determined that claimant should be allowed to present

evidence establishing the reasonableness of her failure to attend the IME. Claimant put on evidence that she was unable to attend the IME due to hazardous weather conditions, and the ALJ concluded that claimant's failure to cooperate was beyond her control. Accordingly, the ALJ set aside SAIF's denial and ordered that SAIF process the claim.

"On review of the ALJ's order, the Board agreed with SAIF that a worker first must challenge a noncooperation denial before he or she is entitled to a hearing on the merits of the claim for compensation. The Board determined, however, that ORS 656.262(15) does not provide that an expedited hearing is the 'only' avenue for challenging a noncooperation denial. Specifically, the Board said:

" 'For instance, the statute does not provide that "the worker first requests and establishes *only* at an expedited hearing * * *." In the absence of such limiting language, we find that the statute shows that an expedited hearing is an option, not a requirement.

" '* * * Under ORS 656.291 and OAR 438-013-0010(1)(c), the *Board* assigns certain cases to the Expedited Claims Service. In other words, there is no statutory procedure for the *worker* to request an expedited hearing.'

"(Emphasis in original.) Thus, the Board concluded that a worker need only make a generic request for a hearing and that the Board has the option, but not a mandatory duty, to provide a hearing on an expedited basis. The Board therefore affirmed the ALJ's order."

*Dubose*, 166 Or App at 644-46 (footnote omitted). SAIF sought judicial review.

The Court of Appeals reversed. The court first rejected the board's conclusion that ORS 656.262(15) did not mandate an expedited hearing. The court also rejected the board's conclusion that a claimant has no duty to request an expedited hearing if the insurer denied the claim for worker noncooperation. The court noted that the statutory text "plainly places a burden on the worker to make an effective request for the necessary hearing." 166 Or App at 647. The court concluded that the board provided a reasonable means

for claimants to request an expedited hearing on a noncoop-eration denial: checking the appropriate box on the standard-ized form that the board provided. As the court reasoned, claimant here did not check the correct box and, therefore, did not receive an expedited hearing. "Given claimant's fail-ure to do the minimum necessary to request an expedited hearing, and because an expedited hearing in fact was not held, SAIF was entitled to have the noncooperation denial upheld." *Id.* at 648. Claimant petitioned this court for review.

As the foregoing summary reveals, this case requires that we determine what steps the pertinent statutes required claimant to take to obtain a hearing after SAIF denied her claim on the ground of worker noncooperation. For the rea-sons set out below, we conclude that claimant does not have a duty to specify for the board that the hearing requested is an *expedited* one.

In construing the relevant statutes, we use the methodology that this court summarized in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). At the first level of analysis, we examine the text and context of the statute, giving words of common usage their plain, natural, and ordinary meaning. *Id.* If that examination reveals the clear intent of the legislature, then our inquiry is complete. *Id.* at 611.

■ We begin with ORS 656.262. One part of that statute imposes on a claimant a duty to cooperate with the insurer's investigation of a claim for workers' compensation benefits. ORS 656.262(14).[2] A second part of that statute sets out the consequences of a claimant's failure to cooperate and pro-vides, in part:

"(15) If the director finds that a worker fails to reason-ably cooperate with an investigation involving an initial claim to establish a compensable injury or an aggravation claim to reopen the claim for a worsened condition, the

---

[2] ORS 656.262(14) provides, in part:

"Injured workers have the duty to cooperate and assist the insurer or self-insured employer in the investigation of claims for compensation. Injured workers shall submit to and shall fully cooperate with personal and telephonic interviews and other formal or informal information gathering techniques."

director shall suspend all or part of the payment of compensation after notice to the worker. If the worker does not cooperate for an additional 30 days after the notice, the insurer or self-insured employer may deny the claim because of the worker's failure to cooperate. * * * *After such a denial, the worker shall not be granted a hearing or other proceeding under this chapter on the merits of the claim unless the worker first requests and establishes at an expedited hearing under ORS 656.291 that the worker fully and completely cooperated with the investigation, that the worker failed to cooperate for reasons beyond the worker's control or that the investigative demands were unreasonable.* If the Administrative Law Judge finds that the worker has not fully cooperated, the Administrative Law Judge shall affirm the denial, and the worker's claim for injury shall remain denied. If the Administrative Law Judge finds that the worker has cooperated, or that the investigative demands were unreasonable, the Administrative Law Judge shall set aside the denial, order the reinstatement of interim compensation if appropriate and remand the claim to the insurer or self-insured employer to accept or deny the claim."

ORS 656.262(15) (emphasis added).

The emphasized wording of ORS 656.262(15) indicates that, if an insurer denies a claim because of a claimant's failure to cooperate, then the claimant "shall not" receive any further proceedings on the merits of the claim "unless the worker first requests and establishes at an expedited hearing under ORS 656.291" one of the facts set out in the statute that demonstrates the claimant's cooperation or justifies or excuses the claimant's noncooperation. The wording of that condition, viewed in isolation, does not make clear whether the word "requests" requires a claimant specifically to request an *expedited* hearing or whether the claimant need request only *a hearing* and then must establish the pertinent facts at the disposition of the claim under ORS 656.291.

That potential ambiguity disappears, however, when we consider that statute together with ORS 656.291, which provides, in part:

"(1)   The Workers' Compensation Board, by rule, shall establish an Expedited Claim Service to provide for prompt, informal disposition of claims.

"(2)   The board shall assign to the service those claims:

"(a)   For which a hearing has been requested when the only matters unresolved do not include compensability of the claim and the amount in controversy is $1,000 or less * * *."

ORS 656.291(2)(a) imposes on the board the obligation to assign to the Expedited Claim Service (ECS) claims that meet three requirements. First, a party must have requested a hearing. Second, the matters unresolved must not include the compensability of the claim. Third, the amount in controversy must be $1,000 or less.

Under that subsection, the board's assignment responsibility depends on the occurrence of a single procedural act: the submission of a request for a hearing by a party. Nothing in the wording of the statute indicates that the requesting party has any pleading obligation to request an expedited hearing under ORS 656.291(2)(a). In that respect, the legislature's procedure for requesting a hearing under ORS 656.291(2)(a) resembles the procedure for requesting "a hearing on any matter concerning a claim" under ORS 656.283(1), in which a claimant also has no statutory duty to request a particular kind of hearing.

ORS 656.291(2)(a) also does not characterize the second and third criteria identified in that statutory provision as pleading requirements that the party who requests the hearing must satisfy. Rather, they are facts that the board must address. If they are true, then the board's assignment responsibility under the statutory provision arises.

The hearing procedure on a noncooperation denial described in ORS 656.262(15) similarly begins with a single procedural act: the submission of a request for a hearing by the worker. There are obvious distinctions in the subject matter of the hearings described in ORS 656.262(15) and ORS 656.291(2)(a). However, those distinctions have nothing to do with, and therefore do not undermine, the significance of the similarity of the procedural step that the legislature chose for the initiation of hearings under each statute.

ORS 656.262(15) and ORS 656.291(2)(a) each specify the statutory criteria that govern whether a claim qualifies for an expedited hearing. Under ORS 656.262(15), the board must resolve through an expedited hearing *all* claims for which the claimant requests a hearing if the insurer or employer has denied the claim due to the claimant's failure to cooperate. As noted above, ORS 656.291(2)(a) lists the criteria that the board must assess (specifically, no compensability issue is present and the amount in controversy must be $1,000 or less), but requires the board to assign to the ECS each claim that meets the listed criteria.

In this case, the board focused on the symmetry, discussed above, in the procedural operation of ORS 656.262(15) and ORS 656.291(2)(a). The board concluded that, under ORS 656.262(15), a claimant must request a hearing after an insurer denies a claim for noncooperation and that, following a request for a hearing, "if appropriate, it is the Board's duty to assign the case to [the ECS]."

That reasoning is persuasive. Under the two statutes discussed above, the responsibility to provide an expedited hearing arises from the board's application of statutory criteria to the parties' dispute, not from any pleading burden that the statutes impose. SAIF's contrary construction would alter, and significantly reduce, the board's responsibility under ORS 656.262(15) by allowing the form of the claimant's request for hearing, rather than the board's assessment of the nature of the dispute, to determine whether the board shall schedule an expedited hearing under ORS 656.291. That construction might permit a claimant, by artful pleading, to force the board to proceed directly to a hearing on the merits and undermine the legislature's declaration in ORS 656.262(15) that an expedited hearing on a noncooperation denial must precede "a hearing or other proceeding under this chapter on the merits of the claim * * *."

The foregoing discussion of the context of ORS 656.262(15) satisfies us that the legislature did not intend to impose under that statute a pleading burden requiring a claimant to request a hearing that is expedited. The statutory term "requests" refers to a request for a hearing, not to a

request for a particular kind of hearing. As the board correctly concluded, once the claimant requests a hearing, the obligation to schedule an expedited hearing under that statute rests with the board. Because the legislature's intent is clear from the statutory text and context, our interpretive task is at an end.

Here, the board determined that claimant had requested a hearing and that no statute required her specifically to request an *expedited* hearing. The board's construction of ORS 656.262(15) in that regard was correct. The Court of Appeals erred in reaching a contrary conclusion.

■ SAIF also contends that claimant in this case did not actually receive "an expedited hearing under ORS 656.291" and that ORS 656.262(15) bars further proceedings on the merits unless the claimant received such a hearing. We agree that ORS 656.262(15) contemplates that the board will assign to the ECS each claim in which a claimant requests a hearing on a noncooperation denial. The board erred in concluding that its assignment obligation was only an option. We also agree with SAIF that the board did not assign this claim to the ECS. Instead, the ALJ conducted a conventional hearing limited to the worker cooperation issues identified in ORS 656.262(15), decided that claimant had failed to cooperate for reasons beyond her control, set aside SAIF's noncooperation denial, and remanded the claim for further processing. On review, the board affirmed.

SAIF is unable to identify any aspect of the board's substantive decision that departed from the issues that an expedited hearing under ORS 656.262(15) must resolve. The board addressed only the issue of claimant's alleged noncooperation and made no determination regarding the merits of the claim. ORS 656.262(15) does not require the board, in an expedited hearing, to reach any other disposition of the claim.

That leaves SAIF to argue only that the hearing did not occur within the expedited time frame identified in ORS 656.291(3)(b):

"Cases assigned to the Expedited Claim Service pursuant to subsection (2)(a) of this section shall be heard within

30 days of the request for hearing, and an order shall be issued within 10 days of the close of the hearing."

We agree that, due to the board's failure to assign the case under ORS 656.291(2), the parties suffered a delay of approximately three and one-half months in the disposition of SAIF's noncooperation denial.

We conclude, however, that SAIF's argument presents a dispute over procedure that lacks substantive content. SAIF contends, for example, that mental stress conditions can be fleeting and that, in evaluating such claims, time is of the essence. We do not disagree with those general assertions, but, in the context of this case, they are little more than abstractions that fail to identify, from evidence in the record, prejudicial error caused by the procedure that the board followed. SAIF's arguments are unresponsive to the only issue before the ALJ and the board: Did claimant fail to attend the IME for reasons beyond her control? SAIF points to nothing in the record that demonstrates that the timing of the hearing or the board's order had any effect on the board's resolution of that issue.

SAIF cites two cases in support of its argument. In *Mabon v. Myers*, 329 Or 1, 984 P2d 278 (1999), this court dismissed a petition to review a ballot title because the petitioner, in violation of a statutory obligation, had failed to notify the Secretary of State of the filing of the petition within the time specified by law. The court held that, under the pertinent statutes, compliance with the notice requirement was a prerequisite to obtaining review of a ballot title. *Id.* at 4.

In *Norton v. Compensation Department*, 252 Or 75, 448 P2d 382 (1968), this court affirmed a denial of workers' compensation benefits because the claimant, in violation of the applicable statute, had failed to request a hearing by the board within the time permitted by law. The relevant statute directed the board not to grant a hearing or enforce the claim unless the claimant timely filed a request for hearing.

The cases on which SAIF relies are distinguishable. They involve enforcement of statutorily required consequences that flow from a *litigant's* failure to timely request administrative or judicial relief. This case involves no similar

procedural default by a litigant. Claimant did all that the law required of her to request a hearing on SAIF's noncooperation denial. The board failed to assign the claim to the ECS, due perhaps to the board's misunderstanding of its duty to do so. However, the ALJ conducted a hearing, and the board rendered a decision that, on this record, is substantively identical to the dispositon that the parties would have received if the board had assigned the claim to the ECS.

In the absence of a legislative pronouncement, analogous to the statute addressed in *Norton*, of the consequence that must result from the board's failure to assign the claim to the ECS or from an untimely disposition of the claim by the board, we examine whether the procedure followed below resulted in prejudice to the party seeking relief on review. SAIF makes no showing on this record that the board's procedure in this case caused prejudice of any kind to SAIF's legal position. Consequently, SAIF has not demonstrated that it is entitled to relief on review from the board's order because of the board's failure to assign the claim to the ECS.

We remand the case to the Court of Appeals to permit that court to consider SAIF's remaining assignments of error.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.