Submitted on remand from the Oregon Supreme Court December 15, 2003, affirmed on petition and cross-petition April 7, 2004

In the Matter of the Compensation of
Marvin E. Lewis, Claimant.

Marvin E. LEWIS,
*Petitioner - Cross-Respondent,*

*v.*

CIGNA INSURANCE CO.;
and Active Transportation Co.,
*Respondents - Cross-Petitioners.*

97-05360, 97-05050 and 97-00071; A106117

87 P3d 698

Linda C. Love and Craine & Love for petitioner - cross-respondent.

Vera Langer and Scheminske & Lyons for respondents - cross-petitioners.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

This workers' compensation case comes before us on remand from the Oregon Supreme Court. *Lewis v. CIGNA Ins. Co.*, 336 Or 125, 79 P3d 882 (2003). The question it now presents is whether an insurer may deny a claim if the claimant refuses to participate or cooperate in an Insurer Medical Exam (IME). The Workers' Compensation Board held that the insurer could do so. We agree and affirm.

The relevant historical and procedural events giving rise to this case can be summarized as follows. Claimant filed claims for compensation following back injuries. Insurer arranged for claimant to take an IME. He failed to appear. Insurer rescheduled the IME and again he failed to appear. Further, on instructions from his attorney, he walked out of a deposition before opposing counsel had finished questioning him. As a result of these acts, insurer denied his claims under *former* ORS 656.262(14) and (15) (1999).[1] As we explain in more detail below, ORS 656.262(14) requires injured workers "to cooperate * * * in the investigation of claims for compensation," and ORS 656.262(15) allows an insurer to deny a claim if the claimant continues noncooperation for 30 days after notice.

Claimant requested a hearing to contest the denial. In doing so, he did not explicitly indicate that he was requesting an *expedited* hearing. When his nonexpedited appeal reached the board, he made two arguments: First, that his conduct at the deposition did not amount to noncooperation; and second, that failure to attend an IME was not noncooperation under ORS 656.262(14) and (15)—rather, it was noncooperation under ORS 656.325(1)(a), and under that statute the maximum penalty was suspension of benefits as opposed to outright denial. Insurer, for its part, argued that claimant had forfeited his right to a hearing on noncooperation because ORS 656.262(15) allowed either an expedited hearing, which he did not request, or no hearing at all.

---

[1] ORS 656.262(14) and (15) were renumbered as ORS 656.262(13) and (14) in 2003. References throughout use the former numbers.

The board rejected insurer's argument that claimant had forfeited his right to a hearing. On the merits of his claim, however, it concluded that his failure to appear at IMEs amounted to noncooperation under ORS 656.262(14). Because that incident of noncooperation sufficed to justify the insurer's denial, the board did not reach claimant's argument that his conduct at the deposition did not amount to noncooperation.

Claimant sought judicial review on the merits, renewing his argument that failure to appear at an IME is not the kind of noncooperation that can lead to claim denial. Insurer cross-petitioned, renewing its argument that claimant's failure to request an expedited hearing deprived the board of jurisdiction to hear the case. Relying on *SAIF v. Dubose*, 166 Or App 642, 999 P2d 529 (2000), *rev'd and rem'd*, 335 Or 579, 74 P3d 1072 (2003), where we had held that a claimant's failure expressly to request an expedited hearing on noncooperation deprived the board of jurisdiction, we concluded that insurer's argument was well taken and that the board should have granted insurer's motion to dismiss. We therefore reversed and remanded the case to the board without reaching claimant's substantive arguments. *Lewis v. Cigna Ins. Co.*, 174 Or App 531, 26 P3d 165 (2001).

At the time, the Supreme Court had allowed review in *Dubose* but had not decided it. Claimant petitioned for review and the Supreme Court held this case pending its decision in *Dubose*. Subsequently, that court reversed *Dubose*, holding that the board, not the claimant, had the obligation to determine whether a hearing request should be sent to the Expedited Claim Service, and that, in the absence of prejudice to the insurer, the board's failure to do so did not deprive it of jurisdiction to hear the appeal in a nonexpedited hearing. *SAIF v. Dubose*, 335 Or 579, 584-90, 74 P3d 1072 (2003). The court then allowed claimant's petition for review in this case, vacated our decision, and remanded the case to us for reconsideration in light of *Dubose. Lewis,* 336 Or 125.

■     *Dubose* now compels the conclusion that the board did, in fact, have jurisdiction to consider claimant's appeal on the merits. That conclusion, in turn, requires us to address

claimant's as yet unaddressed challenge to the board's conclusion that failing to appear at an IME is noncooperation under ORS 656.262(14) and therefore exposes claimant to the penalty of denial under ORS 656.262(15). Because we conclude that the board did not err regarding the IME, we need not address claimant's argument regarding his conduct at the deposition. Claimant's failure to cooperate with the IME suffices to trigger the denial sanction, so the question whether claimant also failed to cooperate at the deposition is irrelevant.

■    ORS 656.262 provides, in part:

"(14)   Injured workers have the duty to cooperate and assist the insurer or self-insured employer in the investigation of claims for compensation. Injured workers shall submit to and shall fully cooperate with personal and telephonic interviews and *other formal or informal information gathering techniques.* Injured workers who are represented by an attorney shall have the right to have the attorney present during any personal or telephonic interview or deposition. * * *

"(15)   If the director finds that a worker fails to reasonably cooperate with an investigation involving an initial claim to establish a compensable injury or an aggravation claim to reopen the claim for a worsened condition, the director shall suspend all or part of the payment of compensation after notice to the worker. If the worker does not cooperate for an additional 30 days after the notice, the insurer or self-insured employer may deny the claim because of the worker's failure to cooperate. * * * After such a denial, the worker shall not be granted a hearing or other proceeding under this chapter on the merits of the claim unless the worker first requests and establishes at an expedited hearing under ORS 656.291 that the worker fully and completely cooperated with the investigation, that the worker failed to cooperate for reasons beyond the worker's control or that the investigative demands were unreasonable. * * *"

(Emphasis added.) Claimant argues that the emphasized words, "other formal or informal information gathering techniques," do not, in context, encompass IMEs; rather, they refer only to investigative techniques such as personal and telephonic interviews and depositions. That argument faces

a formidable (and ultimately insurmountable) difficulty: A physical exam to which a workers' compensation insurer sends a claimant for the purpose of having a physician obtain data in order to determine whether the claimant has an injury or disease that is sufficiently work related to qualify the claimant for workers' compensation benefits is, obviously and unambiguously, an "information gathering technique." Claimant does not, and could not, deny that fact. Instead, he relies on several maxims of statutory construction dealing with how the statute's context creates ambiguity where none might otherwise exist.

■        First, claimant cites *ejusdem generis*, the maxim "which provides that where general words follow [or precede] enumeration of particular classes of things, the general words are to be construed as applicable to things of the same general nature." *Gaston v. Parsons*, 318 Or 247, 253, 864 P2d 1319 (1994). According to claimant, the scope of the general phrase "information gathering techniques" is defined and limited by the specific examples that immediately precede it, "personal or telephonic interviews." Claimant's entire argument on this point, after explaining the meaning of the maxim, consists of the following sentence: "To construe the statutory language in a way which would include IMEs in the same category as 'personal and telephonic interviews' would work an injustice on the plain meaning of the words as they are arranged on the page, and represent an offense against grammar and syntax." The dissenting member of the board also relied on *ejusdem generis*. The sum and substance of his argument is that a medical examination—at least the part of it that does not consist of an interview—is not of the "same general nature as personal and telephonic interviews" in that "[n]o interview or deposition would require disrobing or the myriad of potential tests and instruments a medical examination might require."

We find these arguments unpersuasive. To succeed, they would have to identify some trait or set of traits that the specific examples (personal and telephonic interviews) possess but that the excluded example (IME) does not, and then explain why that trait or set of traits, at the specified level of generality, defines two categories that differ from each other in a way that is relevant to the statute itself. Claimant's

argument is not an argument at all; it is a bare assertion, leaving us to identify for ourselves the presumably obvious reason personal and telephonic interviews differ from IMEs and why that difference reflects a meaningful legislative distinction between subcategories of "information gathering techniques." The board member's dissenting opinion does identify a distinguishing trait: Interviews are entirely oral, whereas an IME requires a claimant to disrobe and be medically tested. What it fails to do is explain how that distinction relates to some purpose the legislature might have had for making it, that is, why that distinction and not some other defines a relevant difference. What reason might the legislature have had in limiting the universe of covered "information gathering techniques" to those that involve oral examinations as opposed to physical examinations? Why should we presume that the specific examples the legislature chose to include in the statute were consciously chosen *because* they did not involve disrobing or being physically tested? Why should we presume that the examples share the trait they share as the result of a conscious decision by the legislature and not due to happenstance—particularly in light of the fact that the legislature is capable of *explicitly* distinguishing between oral exams and physical exams?[2] Without addressing these questions, claimant's argument is not an argument at all but merely an observation.

Second, claimant cites the maxim called *expressio unius est exclusio alterius*, apparently arguing that, by including personal and telephonic interviews within the meaning of the terms "investigation" and "information gathering techniques," the legislature intended to exclude other examples such as IMEs. However, the statute imposes a duty to cooperate with "personal and telephonic interviews *and other formal or informal information gathering techniques.*" ORS 656.262(14) (emphasis added). The use of the word "other" means that some examples beyond the named ones are also included; the statute by its explicit terms is nonexclusionary.

---

[2] As the number of specific examples sharing a single trait increases, the odds that they share the trait by chance diminish. Here, however, there are only two specifics.

Finally, claimant argues that ORS 656.262(14) deals generally with sanctions for noncooperation, while ORS 656.325(1)(a) deals specifically with sanctions for noncooperation concerning an IME. Under the maxim that the specific governs over the general, claimant maintains that ORS 656.325(1)(a) supersedes ORS 656.262(14). The former statute authorizes only suspension of claims; hence the board erred in affirming the insurer's outright denial.

■ Again, we find the argument unpersuasive. ORS 656.325(1)(a) provides, in part:

> "Any worker entitled to receive compensation under this chapter is required, if requested by the Director of the Department of Consumer and Business Services, the insurer or self-insured employer, to submit to a medical examination at a time reasonably convenient for the worker as may be provided by the rules of the director. * * * If the worker refuses to submit to any such examination, or obstructs the same, the rights of the worker to compensation shall be suspended with the consent of the director until the examination has taken place, and no compensation shall be payable during or for account of such period."

Claimant correctly observes that this statute deals specifically with a worker's failure to attend an IME and that it imposes a less severe sanction. However, in order for claimant's "specific over general" maxim to have any force, the specific and general statutes must be inconsistent. ORS 174.020 provides that "when a general and particular provision *are inconsistent*, the latter is paramount to the former. So a particular intent shall control a general one *that is inconsistent* with it." (Emphasis added.) As the Supreme Court has explained,

> "[W]hen one statute deals with a subject in general terms and another deals with the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, while giving effect to a consistent legislative policy. *State v. Pearson*, 250 Or 54, 58, 440 P2d 229 (1968). However, if the two statutes *cannot be harmonized*, 'the specific statute is considered an exception to the general statute.' *Id*."

*State v. Guzek*, 322 Or 245, 268, 906 P2d 272 (1995) (emphasis added).

Claimant's argument fails because the two statutes are not inconsistent. As the board noted, the general statute, ORS 656.262(14) and (15), applies to *initial* claims that involve compensability or the reopening of an aggravation claim, whereas the specific statute applies to any failure to attend an IME, for example, one requested in order to determine the propriety of proposed treatment. It is true that in the circumstances where the two statutes overlap—failure to cooperate in an IME for an initial claim—the two statutes provide different remedies. However, they are not inconsistent remedies. ORS 656.325(1)(a) *requires suspension* of benefits for noncooperation at an IME. ORS 656.262(14) and (15) *permit* an insurer to *deny* the claim in those circumstances. Thus, a worker who fails adequately to cooperate at an IME involved in an initial claim faces two sanctions, but they are not mutually exclusive: His benefits will definitely be suspended, and, if he continues noncooperation, they may be denied outright. Again, we find the board's explanation cogent:

> "More is at risk for the carrier when a worker fails to cooperate with an investigation of an initial claim because only *initial* claims for compensability or aggravation may require the payment of compensation (in the form of interim compensation or possibly medical benefits * * *) before the compensability of the claim has been determined, accepted, or denied. * * * Therefore, it is reasonable that the legislature might have intended to provide a separate, potentially more severe, sanction for a worker's failure to cooperate with a carrier's *initial* investigation, including failure to attend an IME."

(Emphasis in original.)

In sum, we find that none of the statutory maxims that claimant invokes detracts from the clarity of the statutory phrase "information gathering techniques." Further, even if the maxims did create some ambiguity, the legislative history would resolve that ambiguity contrary to claimant's position. ORS 656.262(14) and (15) were enacted as Oregon Laws 1995, chapter 332, section 28, also known as Senate Bill 369. Although most of the discussion and testimony dealt

with interviews and depositions, the provision's author, Representative Mannix, introduced it to the House Committee on Labor as follows:

"[T]he cooperation provision * * * tries to grapple with the issue as to what the worker has to do to cooperate with investigation, *what the worker has to do to cooperate in terms of following through with the medical evaluation.*"

Tape Recording, House Committee on Labor, SB 369, March 6, 1995, Tape 46, Side A (statement of Rep Kevin Mannix) (emphasis added).

Thus, noncooperation with a lawful request to undergo an IME qualifies as noncooperation for purposes of ORS 656.262(14) and (15). Claimant does not argue that his noncooperation was for reasons beyond his control or that the demand to participate was unreasonable. The board therefore did not err in affirming insurer's denial of his claim.

Affirmed on petition and cross-petition.