Submitted on remand from the Oregon Supreme Court January 5,
affirmed April 14, 2004

In the Matter of the Compensation of
Jodie M. Dubose, Claimant.

SAIF CORPORATION
and Evergreen Restaurant Group,
*Petitioners,*

*v.*

Jodie M. DUBOSE,
*Respondent.*

97-01993; A103853

88 P3d 933

Julene M. Quinn for petitioners.

Edward J. Harri, James C. Egan, and Kryger, Alexander, Egan and Elmer, P.C., for respondent.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

This case is before us on remand from the Oregon Supreme Court. Previously, we concluded that claimant had failed to avail herself of the appropriate procedure for challenging SAIF's noncooperation denial and that she therefore was not entitled to a contested case hearing challenging that denial. *SAIF v. Dubose*, 166 Or App 642, 999 P2d 529 (2000). The Supreme Court reversed our decision and remanded the case to us for resolution of SAIF's remaining assignments of error. *SAIF v. Dubose*, 335 Or 579, 74 P3d 1072 (2003). We affirm the order of the Workers' Compensation Board setting aside SAIF's denial.

On remand, two issues remain for our resolution. The first is SAIF's contention that its noncooperation denial should have been upheld because claimant did not adequately prove that her failure to cooperate with its investigation was for reasons beyond her control. To place that contention in perspective, some factual background beyond that set forth in our prior opinion is helpful.

After claimant filed her claim for workers' compensation benefits, SAIF, as the employer's insurer, neither denied nor accepted the claim. Instead, SAIF began an investigation to determine its compensability. As part of that investigation, SAIF scheduled an insurer medical examination (IME) for January 3, 1997. Claimant was advised that she was required to attend that examination and that, if she did not, her benefits could be suspended and her claim could later be denied. On the scheduled date of the IME, bad weather made road conditions sufficiently treacherous that the state police advised motorists to avoid travel if possible. Claimant therefore did not attend the IME.

On January 14, 1997, SAIF asked the Department of Consumer and Business Services (DCBS) to authorize suspension of claimant's potential benefits because of her noncooperation with SAIF's investigation. *See* ORS 656.262(14).[1]

---

[1] At the time of the suspension, *former* ORS 656.262(14) (1999) set forth an injured worker's duty to cooperate and assist an insurer in the investigation of a claim for compensation. *Former* ORS 656.262(15) (1999) set forth the authority of the director of DCBS to authorize suspension of benefits and later denial of a claim

DCBS sent claimant a notice advising her that her benefits would be suspended five days after the date of the notice unless (1) SAIF advised DCBS that claimant was cooperating with SAIF's investigation, or (2) claimant documented that her failure to attend the IME was reasonable. Because neither of those things occurred, DCBS issued an order suspending claimant's benefits pursuant to ORS 656.262(14). In the order of suspension, DCBS advised claimant that the suspension would continue until she "cooperates with the insurer's investigation of the claim by attending the medical examination requested by the insurer." DCBS further advised claimant that SAIF could deny her claim if she failed to cooperate "for an additional 30 days" after the notice of suspension (*i.e.,* within 30 days of January 24, 1997).

On February 25, 1997, SAIF issued a "noncooperation denial" of claimant's claim. In SAIF's denial, it stated:

"You were required to attend a[n IME] on December 18, 1996. You did not attend that examination so we rescheduled your exam for January 3, 1997. You also failed to attend that exam so SAIF requested suspension of your benefits which was granted by the Worker['s] Compensation Division on February 6, 1997. You were ordered to notify and comply with SAIF Corporation to attend an examination within 30 days of the Division's January 24, 1997 notice of suspension to you.

"Since we have not heard from you, we are therefore denying your claim for benefits for your failure to cooperate per the February 6, 1997 suspension order."

When SAIF issued that denial, claimant had taken no steps to advise SAIF why she did not attend the IME on January 3, 1997. Claimant requested a hearing to challenge SAIF's denial. One week before the scheduled date of the hearing, SAIF learned for the first time that claimant did not attend the January IME due to the bad weather and hazardous road conditions.

---

for noncooperation in that investigation. The two pertinent subsections have since been renumbered, *see* ORS 656.262(13) and (14), but are otherwise substantively unchanged for purposes of our analysis in this case. We therefore cite the statutory subsections as they are currently codified.

The administrative law judge (ALJ) set aside SAIF's denial, finding that claimant's failure to attend the January IME was due to circumstances beyond her control and that claimant had not otherwise failed to cooperate with SAIF's investigation of the claim. In affirming the ALJ's order, the board adopted the ALJ's reasoning. SAIF petitioned for reconsideration, arguing that claimant's noncooperation was not limited to her failure to attend the January IME. Rather, according to SAIF, during the 30-day suspension period, claimant was also obligated to cooperate with SAIF's investigation of her claim by advising SAIF of her reasons for not attending the January IME and by contacting SAIF during the suspension period to ask that her IME be rescheduled. The board rejected SAIF's arguments:

> "[W]e are not convinced by SAIF's argument on reconsideration that claimant failed to cooperate with an *investigation* for the 30-day period following issuance of the Order Suspending Compensation. That is, even accepting SAIF's argument that the statute requires claimant to provide evidence concerning her conduct during this period, we find an absence of proof that claimant failed to submit to an information gathering technique. For instance, claimant was not scheduled for another IME, nor did SAIF ask claimant to participate in a personal or telephonic interview."

(Emphasis in original.) In a footnote, the board emphasized that SAIF had not initiated any contact with claimant from the date of the suspension order until it issued its noncooperation denial. The board added, "In light of such circumstances, we are not persuaded that SAIF's 'post-suspension notice' efforts were sufficient to provide notification to claimant that SAIF continued to request her cooperation in the investigation process."

■ In challenging those aspects of the board's order, SAIF renews the arguments that it made below. Specifically, SAIF argues that, under ORS 656.262(13), claimant was obligated to cooperate fully, which included "advising SAIF of the reasons for failing to attend the IME and advising SAIF that she is now willing to cooperate." We agree with the board, however, that SAIF's argument fails.

In particular, we agree with the board that claimant's failure to explain why she did not attend the IME did not breach her duty of cooperation under ORS 656.262(13), which provides, in part:

> "Injured workers have the duty to cooperate and assist the insurer or self-insured employer in the investigation of claims for compensation. Injured workers shall submit to and shall fully cooperate with personal and telephonic interviews and other formal or informal information gathering techniques."

The statute expressly describes the duty to cooperate as a duty to cooperate in the investigation of *claims for compensation.* As the board reasoned, SAIF's insistence that claimant advise SAIF why she did not attend the January 3 IME was not part of an investigation of her claim for compensation:

> "SAIF's argument suggests that claimant did not cooperate because she did not provide it or [DCBS] with any documentation or explanation concerning her failure to attend the scheduled IME after [DCBS] issued its notice and order. The statutes, however, require only that a worker cooperate in an 'investigation of claims for compensation.' We find that 'investigation' of the claim is a separate matter than whether a worker provides documentation or explanation concerning her alleged failure to cooperate. The latter issue relates to the consequence of failing to cooperate (*e.g.,* the suspension of compensation by [DCBS]) and does not concern a carrier's effort to obtain information about the claim itself."

We agree.[2]

■ We also agree with the board that SAIF failed to demonstrate that claimant failed to cooperate after her suspension, because SAIF took no steps that required claimant's cooperation. As the board found, after claimant's benefits

---

[2] We would add that, even assuming that the statute encompasses an obligation to cooperate as SAIF urges, claimant had no notice of that obligation in this case. In its order of suspension, DCBS specifically advised claimant that, to avoid a noncooperation denial of her claim, she had to cooperate "with the insurer's investigation of the claim by attending *the medical examination* requested by the insurer." (Emphasis added.)

were suspended, SAIF did not undertake any further investigation of the claim for compensation. In particular, SAIF did not interview claimant, did not schedule a further IME, and did not otherwise engage in any formal or informal information gathering technique relevant to the claim for compensation. *See Lewis v. Cigna Ins. Co.*, 192 Or App 658, 667, 87 P3d 698 (2004) (noncooperation with a lawful request to undergo an IME qualifies as noncooperation that can justify a denial of a claim). SAIF does not challenge the board's factual findings as unsupported by substantial evidence. Given those facts, we agree that claimant did not fail to assist or cooperate with SAIF, because SAIF did not notify her that it was continuing its investigation of her claim or notify her of how or in what ways she needed to assist or cooperate with SAIF.

The second issue on remand is whether a reversal of a noncooperation denial gives rise to a right to an assessed attorney fee under ORS 656.386(1). We recently resolved that issue in *SAIF v. Wart*, 192 Or App 505, 87 P3d 1138 (2004), contrary to SAIF's position. The board's award of an assessed attorney fee was not error.

Affirmed.