Argued June 30; reversed August 1; rehearing denied
September 14, 1932

# PACIFIC TRADING CO *v*. SUN INSURANCE
## OFFICE, LIMITED

(13 P. (2d) 616)

*G. C. Fulton,* of Astoria (G. C. & A. C. Fulton, of
Astoria on the brief), for appellant.

*A. L. Veazie,* of Portland (Veazie & Veazie, of Port-
land, on the brief), for respondent.

CAMPBELL, J. This is an action brought by plaintiff to recover unearned premiums claimed to have been paid on two fire insurance policies issued by defendant to the Sanborn-Cutting Co. on February 17, 1929, on which plaintiff claims to have paid premiums amounting to $830.68.

These policies contained the usual cancellation clauses permitting the insurer to cancel the policies on five days notice to the insured and returning the unearned portion of the premium.

On April 15, 1929, the insurer canceled the policies leaving an unearned premium of $714.33. The plaintiff demanded payment of this amount on April 20, 1929, and defendant refused payment claiming that it had not been paid the premiums or any part thereof. The cause was tried to a jury and at the close of plaintiff's case in chief, a judgment of non-suit was allowed. Plaintiff appeals.

The only question presented on the appeal is, whether or not the plaintiff produced and offered competent evidence to establish his cause of action.

The plaintiff produced evidence tending to show:

1. That the plaintiff is, and at all times involved in this cause was, a corporation.

2. That the Sanborn-Cutting Co. is, and was, an Oregon corporation engaged in the canning business and has been so engaged for more than 23 years at Astoria, Oregon, prior to the time this cause of action arose.

3. That the defendant is a foreign fire insurance corporation, duly licensed to carry on business in the state of Oregon, and was such for many years prior to the time of the issuance of the policies in question.

4. That for many years, Geo. W. Sanborn and Sons was a partnership consisting of G. W. Sanborn,

F. H. Sanborn and G. O. Sanborn. That since January, 1927, up to and including the time in which the policies in question herein were issued to Sanborn-Cutting Co., by Geo. W. Sanborn and Sons, said partnership consisted of Geo. W. Sanborn and Guy O. Sanborn. That the partnership acted as agents in issuing fire insurance policies for defendant and collecting and remitting to defendant the premiums therefor. In the first instance, the certificate appointing such insurance agency was taken in the name of Geo. W. Sanborn; later, in the name of "Sanborn Agency, F. H. Sanborn and G. O. Sanborn"; since April 1, 1928, in the name of "Sanborn Agency, G. O. Sanborn." That during all these years the Sanborn-Cutting Co. carried many insurance policies of defendant, each year covering its property, aggregating many thousands of dollars. All these policies were issued by the said partnership firm and premiums collected and received by them and remitted to the defendant. The method of writing and carrying this insurance was as follows: The defendant furnished its agents with blank insurance policies with its printed signature thereon, but containing the following provision: "This policy shall not be valid until countersigned by the duly authorized agent at ————." The policies in question herein, and all the policies heretofore issued by the defendant to the Sanborn-Cutting Co. were issued by the said partnership firm, who had one of their employees fill the blanks in the policy with a description of the property insured, the period the policy was to run, and the premium charge, etc. All the policies issued by the defendant to the Sanborn-Cutting Co., since 1922, were countersigned as follows: "Sanborn Agency, per L. Halsan, agent." The policy was then delivered to the insured with a written statement with the name of the partner-

ship as creditor and the Sanborn-Cutting Co. as debtor, in the amount of the said premium. The amount of the premium would then be entered on the partnership books against the insured. The Sanborn Agency kept no books of account; all transactions relative to the insurance policies of defendant were kept in the partnership books; that the "Sanborn Agency, G. O. Sanborn," was really one of the activities of Geo. W. Sanborn and Sons.

L. Halsan, who countersigned the policies for the Sanborn Agency, was an employee of Geo. W. Sanborn and Sons, and was never in the employ of the Sanborn Agency.

On May 10, 1929, the Sanborn-Cutting Co. sold to the plaintiff its entire assets including the property covered by the two insurance policies described in the complaint and duly assigned to plaintiff its claim against defendant for said unearned premiums. That prior to the beginning of this action plaintiff offered to surrender to defendant the two policies in question and demanded payment of the unearned premiums. Defendant refused payment claiming that said premiums, nor any part thereof, had not been paid.

For many years the partnership, in addition to the insurance business, carried on several other lines of business including brokerage. A large part of the products of Sanborn-Cutting Co. was sold through Geo. W. Sanborn and Sons as brokers. The method of operation was as follows: The partnership firm, upon the sale of the products of the corporation, would ship to the buyer, and thereupon attach the shipper's receipt, or bill of lading, to a sight-draft and deposit them in a local bank as cash subject to immediate check. Thereafter, the funds thus received were distributed by the partnership; it would deduct the

brokerage, advances, insurance premiums, etc., and retain sufficient to pay the premiums on all policies of insurance which had theretofore been issued through the partnership to the Sanborn-Cutting Co. and which were unpaid at that particular time.

There is evidence tending to show that the partnership had retained money out of certain shipments to pay the premium on the policies under consideration; that, on the date of issuing the policies, the partnership entered in its books the fact that the premium had been paid and that the same entry had been made on the books of the Sanborn-Cutting Co.

Plaintiff contends that Geo. W. Sanborn and Sons were the agents of defendant in the issuing of the policies and the collecting of the premiums. Defendant claims that the partnership was the agent of the Sanborn-Cutting Co. only.

Agency may be proved in different ways. It may be established by ratification by the principal of the one assuming to act as agent.

"Ratification of the unauthorized acts of one assuming to act as agent may be either express or implied * * *; implied when the conduct of the principal constitutes an assent to the acts in question. And the acts of the principal, it seems will be liberally construed in favor of a ratification. 21 R. C. L. 927, § 106.

"In order to bind a principal by ratification, assent, or acquiescence in prior acts of his agent in excess of authority actually given, a knowledge of the material facts must be brought home to him. He must have been in possession of all of the facts and must have acted in the light of such knowledge. Id. 928, § 107."

The testimony introduced by plaintiff touching the method by which defendant issued its policies for many years, and the signature to each policy, tended to show that defendant ratified the act of the "Sanborn

Agency" in appointing or substituting an agent to countersign and issue the policies.

There are many inferences that the jury might draw, and properly draw, in favor of plaintiff from the evidence introduced.

There is really no dispute between learned counsel on the law, but their chief disagreement is as to the fact whether Geo. W. Sanborn and Sons was the agent of the insured or the insurer, at the time the entries were made in the account books regarding the disposition of the moneys received from the sale of the products of the Sanborn-Cutting Co.

This is a question of fact to be determined by a jury from all the evidence and circumstances in the case under proper instructions. If the jury should find that the Geo. W. Sanborn and Sons was the agent of the insurer, then payment to the agent was payment to the principal. The converse of this is equally true.

 As a general proposition, a broker's duty is complete, and his authority ceases when the sale is made and the receipts therefrom fully accounted for.

In attempting to prove its case, plaintiff offered in evidence the account books of Geo. W. Sanborn and Sons showing the detail of the transaction of the payment of the premiums in question. It also offered in evidence the books of the Sanborn-Cutting Co. covering the same transaction. On plaintiff's theory of the case, both these items of evidence were competent.

The court erred in allowing a non-suit, and, therefore, the judgments should be reversed and the cause remanded for further proceedings not inconsistent herewith.

It is so ordered.

BEAN, C. J., BROWN and BELT, JJ., concur.