On respondent's March 26 motion to dismiss petition for review of ballot title, motion to dismiss allowed; petition to review ballot title dismissed June 24, 1999

## Lon T. MABON,
*Petitioner,*

*v.*

## Hardy MYERS,
## Attorney General,
## State of Oregon,
*Respondent.*

## (SC S46240)

984 P2d 278

Richard D. Wasserman, Assistant Attorney General, Salem, filed the motion to dismiss, response, and supplemental memorandum for respondent. With him on the motion and response were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General, Salem.

Lon T. Mabon, petitioner *pro se*, filed the responses and supplemental memorandum.

GILLETTE, J.

Van Hoomissen, J., dissented and filed an opinion in which Leeson and Riggs, JJ., joined.

## GILLETTE, J.

■ This is an original proceeding brought under ORS 250.085 for review of a ballot title certified by the Attorney General. Petitioner, the principal sponsor of the measure in question, is an elector who timely submitted written comments to the Secretary of State concerning the Attorney General's draft ballot title under ORS 250.067(1). Accordingly, he is entitled to seek a different title in this court, ORS 250.085(2), unless some procedural impediment exists that prevents this court from reaching the merits. For the reasons that follow, we conclude that there is such a procedural impediment in this case. Accordingly, we dismiss the petition.

The Attorney General has moved to dismiss the petition for review of ballot title on the ground that, although the petition was filed timely in this court, petitioner failed to notify timely the Secretary of State that the petition for review of ballot title had been filed, as he is required to do by ORS 250.085(4). That statute provides:

> "An elector filing a petition [for review by the Supreme Court of a ballot title] under this section shall notify the Secretary of State in writing that the petition has been filed. The notice shall be given not later than 5 p.m. on the next business day following the day the petition is filed."

The parties have submitted argument on this question and have included affidavits that establish the factual predicate for resolution of the issue. From the documents, we conclude that the following fairly states the procedural history. Petitioner filed his petition in this court on March 23, 1999. Petitioner mailed a copy of the petition by certified mail to the Secretary of State.[1] The next business day was March 24, 1999. The certificate returned to petitioner discloses that the copy of the petition was received by Ronald Ingram, an employee of the Department of Administrative Services (DAS), on March 24, 1999.

---

[1] We assume, for purposes of this opinion, that service by mail of a copy of the petition for review of ballot title, if timely given to the Secretary of State, would constitute the notice contemplated by ORS 250.085(4).

Ingram is a "mail specialist" who processes outgoing and incoming mail for the state; he is not an employee of the Office of the Secretary of State. One of his duties is to sign for certified mail addressed to certain state officials (among whom, we infer, is the Secretary of State) and to ensure that such mail is delivered promptly to those officials. However, Ingram acknowledges in his affidavit in this case that if, at the time when he signs for a piece of certified mail, the last mail delivery of the day already has left the state mail room, then "the mail will not reach the designated state official until the next business day."

We infer from the record that the foregoing description was true in this case. The return receipt signed by Ingram shows only that he received petitioner's mailing on "Mar[ch] 24, 1999." The Secretary of State's office-receipt stamp shows that that office did not receive the mailing until 10:36 a.m. on March 25, 1999—the next business day after Ingram had signed for it, and two business days after the petition to review ballot title had been filed in this court.

The Attorney General argues that, when viewed in light of the foregoing facts, this case is governed by this court's decision in *Sizemore v. Myers*, 327 Or 71, 957 P2d 577 (1998), a case construing the same statute that is at issue here. In *Sizemore*, the parties agreed that the requisite notice to the Secretary of State was not timely. The petitioners in that case argued that the fact that notice to the Secretary of State was not timely was irrelevant, because ORS 250.085(4) was not a jurisdictional statute. This court held that, although ORS 250.085(4) is not a "jurisdictional" statute as that term commonly is used, compliance with its requirements is necessary for a petitioner to be entitled to obtain review of a ballot title:

> "Ballot title review proceedings are entirely a creature of statute. A party's right to review, the bases on which it can be obtained, the grounds on which an objection to a ballot title may be sustained, and the scope of this court's authority to modify a ballot title are prescribed by statute. * * * Thus, this court's authority to review a ballot title

extends only to those cases in which the statutory prerequisites to review have been satisfied. * * * [T]he court recognize[s] the limits on its authority created by the statutory arrangement and * * * [keeps] itself within those limits."

*Sizemore*, 327 Or at 74-75. Because the requirement in ORS 250.085(4) that the Secretary of State be given notice by 5:00 p.m. on the next business day was "clear" and had not been met, the petition in that case was dismissed. *Id.* at 75.

This case differs factually from *Sizemore* in that, in the present case, notice *had* been given timely to *someone*. It is clear, however, that the someone was Ingram, an employee of DAS, not the Secretary of State. Petitioner argues, in essence, that Ingram should be treated as the Secretary of State's agent and that notice to the agent should be deemed to be notice to his principal.

We are not persuaded. The record contains nothing to suggest that the Secretary of State ever has designated Ingram as his agent. Ingram's affidavit emphasizes that he is not an employee of the Secretary of State; he is employed by—and is the agent of—DAS. There is a statute that describes how DAS came to receive mail directed at the Secretary of State. ORS 283.140 provides, in part:

"(1)   * * * [DAS] may operate central mail * * * service for agencies located in Salem, * * * where it would be economical to do so. * * * [T]he cost of mail * * * services, shall be charged to the various agencies served and paid to [DAS] in the same manner as other claims against the agencies are paid.

"(2)   If [DAS] operates central mail service, it shall:

"* * * * *

"(b)   Report biennially to the Director of [DAS] on opportunities for savings through state agency mail room centralization, consolidation and automation and through mail route coordination."

Nothing in that statutory text or context suggests that, in authorizing DAS to process agency mail in Salem, the legislature intended to permit DAS to become the agent of various agencies for the purpose of receiving time-sensitive materials subject to statutory service or notice deadlines. Instead, it is

clear that the legislature intended the statute only to authorize DAS to put in place a cost-saving procedure, if the facts warranted doing so. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (establishing template for determining legislative intent in enacting statutes; authorizing court to decide legislative intent at text and context level if intent is "clear"). The statute does not assist petitioner.

Under all the circumstances, the only permissible factual conclusion is that the Secretary of State did not receive the requisite notice until 10:36 a.m. on March 25, 1999. That was a day too late. *Sizemore*, 327 Or at 75. Petitioner is responsible for any untimeliness caused by a shortcoming in the method of notification he chose. The motion to dismiss the petition is well taken.[2]

Motion to dismiss is allowed. Petition to review ballot title is dismissed.

**VAN HOOMISSEN, J.,** dissenting.

ORS 250.085(4) provides:

"An elector filing a petition under this section shall notify the Secretary of State in writing that the petition has been filed. The notice shall be given not later than 5 p.m. on the next business day following the day the petition is filed."

The question is: Did petitioner timely notify the Secretary of State that the petition for review of a ballot title had been filed?

Petitioner mailed a copy of his petition to the Secretary of State, from the Main Post Office in Salem, on March 23, 1999, by priority mail, return receipt requested. Petitioner received a return certified receipt on March 25, signed by Ronald Ingram, a "mail specialist" for the Department of Administrative Services (DAS), indicating that the Secretary of State received the petition on March 24.

---

[2] It may be argued that, as a practical matter, future petitioners will need to deliver their written notices to the Secretary of State physically to assure compliance with the requirements of ORS 250.085(4). If so, then that consequence flows from the stringent requirements that the legislature chose.

Ingram states in his affidavit that one of his duties is to receive and sign for certified mail addressed to certain state officials, including the Secretary of State, and to ensure that certified mail is promptly routed to state officials.

With no evidence to the contrary appearing in the record, it is reasonable to assume that the Secretary of State delegated to DAS the authority to receive and sign for certified mail, which DAS, in turn, delegated to its employee, Ingram.[1] Thus, I would conclude that DAS is the Secretary of State's agent for the purpose of receiving, signing for, and routing certified mail to state officials and that, under ORS 250.085(4), DAS's receipt of the petition on March 24 constitutes receipt by the Secretary of State on March 24. In these circumstances, notice to DAS constitutes notice to the Secretary of State.[2]

An agency relationship is created when one person manifests an intention that another shall act in his or her behalf and the other person consents to represent that person. Generally, no formality is required to create an agency relationship. The relationship may be created by conduct by the principal that may be interpreted as an intention to appoint an agent. A fair and reasonable consideration of the record here requires a conclusion that DAS was the Secretary of State's agent for the purpose of receiving and signing for certified mail. Therefore, DAS's receipt of the petition on March 24 constituted receipt by the Secretary of State on that day.

---

[1] The Attorney General has advised this court that the Secretary of State has been unable to find any written agreement between the Secretary of State and DAS for DAS to provide mail services for the Secretary of State. If no such agreement exists, then one can only wonder by what authority does DAS receive and sign for certified mail for the Secretary of State?

[2] Apparently, the majority would conclude that, had DAS delivered the mail to the Secretary of State on March 24, the day that DAS had received the mail, the filing would have been timely. However, because DAS waited until the following morning to deliver the mail, the majority concludes that the filing was untimely. Such a conclusion makes the timeliness of the filing depend on the conduct of a "mail specialist," rather than on the conduct of a petitioner. Moreover, so far as the record shows, no one outside DAS, including petitioner, was aware of the DAS policy that certified mail would not be delivered after 4:00 p.m. on the day that it was received. Nor does the record indicate what time on March 24 DAS received petitioner's certified mailing.

Assuming, *arguendo*, that the Secretary of State did not affirmatively authorize DAS to receive and sign for certified mail, such authorization is apparent from the history of the dealings between DAS and the Secretary of State, and is thus binding on the Secretary of State. The Secretary of State has manifested his consent that DAS would act on his behalf for this limited purpose, and DAS has consented to do so. *See Briggs v. Morgan*, 262 Or 17, 23, 496 P2d 17 (1972) (agency may be proved by circumstances and the course of dealings between the parties). Moreover, the status of DAS as the Secretary of State's agent for this limited purpose is established by his implied ratification of DAS's practice of acknowledging receipt of certified mail for the Secretary of State. *See Pac. Trading Co. v. Sun Ins. Office*, 140 Or 314, 318, 13 P2d 616 (1932) (agency may be established by ratification, express or implied, by the principal of the one assuming to act as the agent). It is reasonable to assume that the Secretary of State is aware that DAS is accepting and signing for certified mail addressed to him and that he approves of that practice.[3] The Secretary of State has not contended in this case that he was unaware that an employee of DAS accepted certified mail on his behalf; nor has he contended that DAS lacked authority to do so.

*Sizemore v. Myers*, 327 Or 71, 957 P2d 577 (1998), is not to the contrary. First, the question presented in this proceeding was not at issue there. Second, in *Sizemore*, the parties agreed that the requisite notice was not timely. Here, the parties dispute whether the notice was timely.

On this record, I would conclude that petitioner timely notified the Secretary of State that the petition for review of a ballot title had been filed. The majority's conclusion to the contrary stresses form over substance and, thus, defeats the statutory goal of securing an expeditious review of a ballot title by this court. ORS 250.085(7); *Sizemore*, 327 Or at 75.[4]

---

[3] Nothing in ORS 283.140 indicates that the legislature intended that statute to affect the determination of the date of receipt by a state agency of any document for which the law provides a filing deadline.

[4] As the noted satirist H. L. Mencken put it: "For every problem there is a solution which is simple, neat—and wrong."

I respectfully dissent.

Leeson, and Riggs, JJ., join in this dissent.