210 December 14, 2017 No. 63

IN THE SUPREME COURT OF THE
STATE OF OREGON

Ben UNGER,
Mary Geddry, John Booker,
and Marie Bowers Stagg,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(S065159 (Control), S065160, S065163)

En Banc

On petitions to review ballot title filed July 28, 2017; considered and under advisement on September 26, 2017.

Steven C. Berman, Stoll Stoll Berne Lokting & Shlachter, PC, Portland, filed the petition and reply and supplemental memoranda on behalf of petitioner Unger.

Ann B. Kneeland, Eugene, filed the petition and reply and supplemental memoranda on behalf of petitioners Geddry and Booker.

Jill Gibson, Gibson Law Firm, LLC, Portland, filed the petition and reply and supplemental memoranda on behalf of petitioner Stagg.

Greg Wasson, *pro se*, Salem, filed the supplemental memorandum on behalf of *amicus curiae* himself.

Shannon T. Reel, Assistant Attorney General, Salem, filed the answering memorandum on behalf of respondent. Christopher A. Perdue, Assistant Attorney General, Salem, filed the supplemental memorandum on behalf of respondent. Also on the answering and supplemental memoranda were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

LANDAU, J.

The petitions to review the ballot title are dismissed.

**LANDAU, J.**

This case comes to us as a ballot title challenge. But, because of its unusual procedural posture, we asked the parties for briefing on our authority even to undertake it. In brief, the issue is this: Does the Oregon Supreme Court have authority to consider a ballot title challenge if the underlying initiative measure has not satisfied all the statutory prerequisites for obtaining a ballot title in the first place? For the reasons that we spell out in this opinion, the answer to that question is no. We therefore dismiss the ballot title challenge without addressing its merits.

## I.   OVERVIEW OF OREGON'S INITIATIVE PROCESS

We begin with an overview of the initiative process, to provide context for the facts of this case and our disposition of the issue we have mentioned. Article IV, section 1(2)(a), of the Oregon Constitution provides that the people of the state possess the power to "initiate" lawmaking independently of the legislature. That is, they have the power to propose statutes and amendments to the constitution, which will go into effect if approved by a sufficient number of voters at a statewide election. *Id*.

The Oregon Constitution places a number of requirements and conditions on the exercise of the initiative power. First, a measure may not be submitted to a vote until supported by a petition signed by a specified number of qualified voters equal to a percentage of the total number of votes cast for all candidates for governor at the last election at which the governor was elected to a four-year term; the percentage depends on whether the measure is statutory or constitutional. Or Const, Art IV, § 1(2)(b), (c). Second, the petition must be filed with the Secretary of State "not less than four months before the election at which the proposed law or amendment to the Constitution is to be voted upon." *Id*. at § 1(2)(e). Third, the petition must include the full text of the proposed amendment. *Id*. at § 1(2)(d). Fourth, it must "embrace one subject only and matters properly connected therewith." *Id*.

The constitution also imposes limitations on the exercise of the initiative power when it is used to amend the

constitution. Of relevance to this case, Article XVII, section 1, provides that when two or more amendments are submitted to the voters in the same election, "they shall be so submitted that each amendment shall be voted on separately." In *Armatta v. Kitzhaber*, 327 Or 250, 277, 959 P2d 49 (1998), this court held that separate-vote requirement of Article XVII, section 1, means that a single initiative measure cannot "effect two or more changes that are substantive and not closely related * * * because it would prevent the voters from expressing their opinions as to each proposed change separately."

The constitution expressly authorizes the legislature to prescribe "[t]he manner of exercising" the initiative power by "general laws," that is, by statutes. Or Const, Art IV, § 1(5). *See generally Caruthers v. Kroger*, 347 Or 660, 664, 227 P3d 723 (2010) ("[T]he constitution empowers the legislature with the authority and responsibility of fleshing out the [initiative] process."). Pursuant to that constitutional authority, the legislature enacted ORS chapter 250, which provides a comprehensive statutory process for placing proposed initiative petitions on the ballot and ensuring compliance with constitutional requirements and conditions. The legislature also authorized the Secretary of State to adopt administrative rules necessary to administer the state's election laws, ORS 246.110 and ORS 246.150. It also more specifically authorized the secretary to adopt rules necessary to carry out specific provisions of ORS chapter 250. *See, e.g.*, ORS 250.015(1); ORS 250.045(3); ORS 250.067(5).

In brief, the law requires that individuals who propose a statewide initiative measure, known as "chief petitioners," file with the Secretary of State a "prospective petition," which consists of the text of the proposed measure along with the signatures of at least 1,000 electors. ORS 250.045(1). Once the secretary has received a prospective petition and verified the sponsorship signatures, the secretary forwards it to the Attorney General. ORS 250.065(2). The Attorney General then has five days in which to prepare a draft ballot title—that is, a three-part summary of the proposed measure and its major effects stated in the form of (1) a caption of no more than 15 words; (2) a "yes" and "no"

vote result statement of no more than 25 words explaining the consequences of a "yes" and "no" vote; and (3) a summary of no more than 125 words. ORS 250.035(2). The secretary then provides notice of the public's right to submit written comments on the draft ballot title. ORS 250.067(1). After receiving any comments, the secretary forwards them to the Attorney General. *Id*. The Attorney General then considers those comments and certifies either the original draft ballot title or a revised ballot title. ORS 250.067(2).

Electors who previously commented on the draft ballot title and who are dissatisfied with the certified ballot title may seek review in the Supreme Court. ORS 250.085(2). Any such electors are required to file a petition for judicial review within 10 business days of the Attorney General's certification of the ballot title. ORS 250.085(3)(a). And the elector must notify the Secretary of State in writing the following business day that the petition has been filed. ORS 250.085(4).

The Supreme Court reviews the Attorney General's certified ballot title to determine whether it substantially complies with the statutory requirements as to its form and content. ORS 250.085(5). In conducting that review, the court is constrained not to consider any argument not previously submitted in written comments to the Secretary of State on the draft ballot title, unless the arguments concern wording in the ballot title that was added after that stage in the process. ORS 250.085(6). If the court determines that the challenged ballot title substantially complies with the statutory requirements, the court certifies the ballot title to the secretary. ORS 250.085(8). If the court determines that the challenged ballot title does not substantially comply, then the court refers the ballot title to the Attorney General for modification. *Id*. The final, certified ballot title then is placed on the cover of the initiative petition, which is required before chief petitioners may solicit signatures in support of the measure. ORS 250.045(6).

During the ballot title process, the Secretary of State reviews the prospective petition for compliance with the requirements of Article IV, section 1, and Article XVII, section 1, including that a proposed measure does not

contain more than one amendment. OAR 165-014-0028(1). The secretary solicits comments from the public on those issues at the same time that the Attorney General is drafting the ballot title. OAR 165-014-0028(2), (3). Those comments are submitted during the same time for submitting comments on the Attorney General's draft ballot title. OAR 165-014-0028(3). After reviewing the comments, the secretary notifies the chief petitioners of the results of his or her review. OAR 165-014-0028(4). If the secretary determines that a proposed initiative measure does not satisfy constitutional requirements, he or she will not approve the cover and signature sheet that contains the certified ballot title and that enables chief petitioners to collect signatures in support of the proposed measure. OAR 165-014-0028(5). If an elector is dissatisfied with the secretary's determination, judicial review is available in Marion County Circuit Court. ORS 246.910; OAR 165-014-0028(6).

Although an initiative petition may be filed at any time, once it has been filed, a number of deadlines come into play. Those deadlines are of two types. First, there is a sequence of deadlines that are defined from the date of the filing itself and from various stages in the process from that step forward. Once the Attorney General receives a copy of the prospective petition, for example, he or she has five business days in which to provide a draft ballot title. ORS 250.065(3). Written comments on the draft must be delivered to the Secretary of State within 10 business days after that. ORS 250.067(1). The Attorney General then has 10 business days to consider the comments and respond with a certified ballot title. ORS 250.067(2)(a). When the Attorney General certifies a ballot title, an elector seeking Supreme Court review must file a petition within 10 business days. ORS 250.085(3)(a).

Second, other deadlines are imposed by reference to the date of the regular general election. According to Article IV, section 1(4)(c), elections on initiative measures are held "at the regular general elections," which are held biennially. Or Const, Art II, § 14. The deadline for filing a circulated initiative petition with the Secretary of State, together with the required number of supporting signatures,

is "not less than four months before the election." Or Const, Art IV, § 1(2)(e). In other words, regardless of when a prospective initiative petition is filed, the process must be completed—the collection of 1,000 sponsorship signatures, the certification of a ballot title, the secretary's certification as to constitutional requirements, and the collection of the required number of signatures on the circulating petition—no later than four months before the next regular general election.[1]

## II.  FACTS

With that background in mind, we turn to the facts. Although undisputed, they are unfortunately somewhat complex. On September 22, 2015, chief petitioners Geddry and Booker filed a prospective initiative petition with the Secretary of State for inclusion on the November 2016 general election ballot. The secretary assigned the prospective petition an identification number, IP 55 (2016). The details of the measure itself are not relevant to this opinion; suffice it to say that, if adopted, it would have amended Article I of the state constitution to add, among other things, a new section declaring that certain local enactments are immune from state and federal preemption. IP 55 (2016) § 3. The chief petitioners collected the required 1,000 sponsorship signatures and submitted them to the secretary on February 9, 2016.

The secretary verified the sponsorship signatures and then forwarded the text of IP 55 (2016) to the Attorney General for drafting of the ballot title. The Attorney General issued a draft ballot title on March 3, 2016.

At the same time, the secretary solicited comments on whether the text of IP 55 (2016) complied with the constitutional requirements for proposed initiative petitions. The Attorney General opined that the proposed initiative did not

---

[1] Other deadlines are similarly defined in terms of a specified number of days counted back from a regular general election. ORS 250.127(1) requires the filing of a financial impact estimate 99 days before the election. The statute then provides that the Secretary of State must certify the financial impact estimate no later than 90 days before the election. ORS 250.127(4). And the deadline for filing a petition to review the legal sufficiency of a financial impact statement is 85 days before the election. ORS 250.131(2).

comply with the constitutional procedural requirements of Article XVII, section 1. The Secretary of State agreed with the Attorney General and notified the chief petitioners that she would decline to issue a certified ballot title or approve the proposed initiative for circulation.

Chief petitioners Geddry and Booker initiated an action in Marion County Circuit Court, on May 31, 2016, requesting judicial review of the Secretary of State's refusal to certify IP 55 (2016). On July 8, 2016, the deadline for submitting a petition with constitutionally required signatures for the November 2016 election passed. Four months later, the November 2016 election was held. Six months after that, on May 4, 2017, the trial court entered a general judgment declaring that IP 55 (2016) did, in fact, satisfy "all procedural constitutional requirements," contrary to the determination of the secretary.

Of course, the problem was that both the constitutional deadline for submitting initiative petition signatures and the November 2016 election itself had already passed by that time. The trial court nevertheless ordered the Secretary of State simply to assign a new initiative petition number to IP 55 (2016) for the November 2018 election cycle and to certify that the measure complied with constitutional procedural requirements—in effect, to pick up where the measure would have been had the secretary certified the measure back in 2016, only now in the 2018 election cycle.

The Secretary of State appealed the trial court's judgment, and that appeal currently is pending before the Court of Appeals in *Geddry v. Richardson* (A164828). The secretary also sought a stay of the trial court's judgment. The Appellate Commissioner issued a stay, but he imposed several conditions. One of the conditions was that the Attorney General issue a certified ballot title, which any elector who had earlier submitted comments on IP 55 (2016) could challenge before this court.

The Secretary of State assigned a new number to IP 55 (2016). The measure is now known as IP 29 (2018). The text of IP 29 (2018) is the same as IP 55 (2016). No

chief petitioner filed a new petition with the secretary.[2] No one submitted 1,000 sponsorship signatures in support of the measure as a prospective petition. The Attorney General did not issue a draft ballot title for comment. No notice was sent out, and no new comments were received. The Attorney General simply certified, as instructed by the Appellate Commissioner, a ballot title for IP 29 (2018) on the basis of comments that had been submitted back in 2016.

Petitioners Unger and Stagg, who submitted comments on the Attorney General's draft ballot title in 2016, along with chief petitioners Geddry and Booker, now seek review of the legal sufficiency of the certified ballot title for IP 29 (2018). In response, the Attorney General suggested that this ballot title proceeding was not properly before us, because the expiration of the deadline for submitting initiative petition signatures on IP 55 (2016) had passed, which, in effect, killed the measure and mooted any claims about its constitutional significance. We perceived an additional potential impediment to our review of the dispute concerning the adequacy of the ballot title for IP 29 (2018). Accordingly, we requested simultaneous briefing from the parties to address two questions:

> "(1) The Supreme Court's authority in ballot title review proceedings is limited. *See Sizemore v. Myers*, 327 Or 71 (1998) ("[T]his court's authority to review a ballot title extends only to those cases in which the statutory prerequisites to review have been satisfied."). Have the statutory prerequisites to review been satisfied with respect to the proposed initiative petition that has been renumbered and designated as initiative petition (IP) 29 (2018)?

> "(2) Does the disposition of the case currently pending before the Court of Appeals with respect to IP 55 (2016), *Geddry v. Richardson* (A164828), bear on this court's authority to address IP 29 (2018)?

In response to those questions, the Secretary of State takes the position that this court lacks authority to

---

[2] In fact, the secretary's database of filed initiatives and referenda lists IP 29 (2018) as having been filed back in 2015, on the same date as the filing for IP 55 (2016). *See* http://egov.sos.state.or.us/elec/web_irr_search.record_detail?p_reference=20180029..LSCYYY29 (last accessed December 7, 2017).

address the legal sufficiency of the ballot title for IP 29 (2018), because none of the statutory prerequisites have been satisfied. The secretary points out that no new measure was filed and no sponsorships were gathered for a 2018 initiative petition. Instead, the earlier measure, IP 55 (2016) was simply renumbered, in accordance with the trial court's instruction. The secretary urges us to dismiss this ballot title proceeding. In the alternative, he suggests that we hold this proceeding in abeyance pending the outcome of the Court of Appeals matter in *Geddry v. Richardson* (A164828).

Petitioner Unger likewise argues that, once the deadline for submitting signatures on a measure for a particular election has passed, that measure is dead. He contends that, if chief petitioners wish to place IP 29 (2018) on the ballot for the November 2018 election, they need to file a new petition, collect the required number of sponsorship signatures, and begin the process anew for the current two-year election cycle. He asks us to dismiss this proceeding. Petitioner Stagg also argues that we lack authority to review the sufficiency of the ballot title for IP 29 (2018), because no such petition ever has been filed with the Secretary secretaryof State.

Chief petitioners Geddry and Booker contend that all statutory prerequisites have been satisfied to authorize this court to review the ballot title for IP 29 (2018). In so contending, however, they mention only the statutory provisions pertaining to Supreme Court review, namely, ORS 250.085. With respect to the second question, they acknowledge that this ballot title proceeding could become moot if the Court of Appeals were to reverse the trial court while this proceeding remained pending. But they contend that, in the meantime, this case is "ripe" for judicial review. And they vigorously oppose holding this case in abeyance until the Court of Appeals resolves *Geddry v. Richardson* (A164828), because doing so would "consume most or all of the time for gathering signatures in the 2018 election cycle, and thus amount to a *sub silentio* squashing of [IP 29 (2018)]."

## III.   ANALYSIS

This court has explained that the ballot-title review process is entirely a "creature of statute" and that the court's

role in that process is limited to cases in which all relevant statutory requirements have been met. *Sizemore v. Myers*, 327 Or 71, 74, 957 P2d 577 (1998), is directly on point. In that case, an elector petitioned this court to review a ballot title that had been certified by the Attorney General. The problem was that the petitioner had failed to notify the Secretary of State of the petition in a timely manner, as required by statute. ORS 250.085(4). The chief petitioners intervened in the ballot title proceeding, arguing that it should be dismissed because of the petitioner's failure to provide timely notice to the secretary. According to the intervenors, the failure to comply with the statutory notice requirement amounted to a jurisdictional defect that prevented the court from exercising authority to review the ballot title. *Id*. at 73-74.

This court concluded that the failure to comply with the statutory notice requirement was not, strictly speaking, "jurisdictional," but it nevertheless required dismissal:

> "Ballot title proceedings are entirely a creature of statute. A party's right to review, the bases on which it can be obtained, the grounds on which an objection to a ballot title may be sustained, and the scope of this court's authority to modify a ballot title are prescribed by statute. \*\*\* *Thus, this court's authority to review a ballot title extends only to those cases in which the statutory prerequisites to review have been satisfied.*"

*Id*. at 74 (emphasis added). The "statutory arrangement" for obtaining a ballot title, the court emphasized, amounted to "limits on its authority." *Id*. at 75. Because it was undisputed that the petitioner had failed to comply with one of the statutory prerequisites to ballot-title review, the court concluded, the ballot title proceeding had to be dismissed. *Id*.

To the same effect is *Mabon v. Myers*, 329 Or 1, 6, 984 P2d 278 (1999). Citing its decision in *Sizemore*, the court again dismissed a ballot title proceeding when a petitioner failed to satisfy statutory notice requirements.

In a related vein, in *Girard/Edelman v. Myers*, 334 Or 114, 45 P3d 934 (2002), the court refused to correct an error in a ballot title that the Attorney General identified, because no one had raised the error with Secretary of State, as required by ORS 250.085(6). The court explained that,

because no one had previously identified the error, "the authority" to address it "does not rest with this court." *Id*. at 117.

From the foregoing authorities this much is clear: If a petitioner fails to satisfy the statutory prerequisites for ballot-title review, this court lacks authority to proceed. The question remains, however, whether the statutory prerequisites for ballot-title review include any and all steps that precede this court's review or are limited solely to those requirements and conditions that follow the Attorney General's issuance of a certified ballot title. That is a question of statutory construction, which we resolve by examining the text of the relevant statutes in context, along with any pertinent legislative history, relevant case law, and other aids to construction. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Especially relevant to this proceeding is the principle that we do not consider the meaning of a statute in a vacuum; rather, we consider all relevant statutes together, so that they may be interpreted as a coherent, workable whole. *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e construe each part [of a statute] together with the other parts in an attempt to produce a harmonious whole.").

With that principle in mind, the answer is straightforward. The various requirements set out in ORS chapter 250 cannot be viewed in isolation. Each is expressly tied to a series of interlinked steps. As we have noted, for example, the timing of each statutory requirement for obtaining a ballot title is keyed to a prior step. Once the Attorney General receives a copy of the prospective petition, he or she has five business days in which to provide a draft ballot title. ORS 250.065(3). Written comments on the draft must be delivered to the Secretary of State within 10 business days after that. ORS 250.067(1). The Attorney General then has 10 business days after that to consider the comments and respond with a certified ballot title. ORS 250.067(2)(a). Once the Attorney General certifies a ballot title, an elector seeking Supreme Court review must file a petition within 10 business days after that. ORS 250.085(3).

The various stages in the process are interconnected in other ways, as well. ORS 250.085(6), for instance,

provides that this court cannot consider arguments asserted in a ballot title challenge that were not previously presented in writing to the Secretary of State pursuant to ORS 250.067. And, as we have noted, this court has concluded that a failure to comply with that early-stage requirement deprives this court of authority to review the legal sufficiency of the ballot title. *Girard/Edelman*, 334 Or at 117.

In sum, it is the entirety of the statutory process that is relevant to determining this court's authority to engage in ballot title review, not the specific requirements of ORS 250.085 in isolation. As this court explained in [*Wal-Mart Stores, Inc. v. City of Central Point*](), 341 Or 393, 399 n 6, 144 P3d 914 (2006), referring to the significance of its decision in *Sizemore*, the requirements of ORS chapter 250 "effectively imposed limits on the court's authority—created by *the statutory scheme itself*—to review ballot titles." (Emphasis added.)

Whether that means that any failure to comply with statutory requirements—no matter how arguably trivial in that larger statutory scheme—we leave for another day. In this case, the failure to comply with statutory requirements was substantial. Although the Attorney General certified a ballot title, none of the statutorily required prerequisites to taking that action had been satisfied. No one filed a prospective petition for IP 29 (2018). No one obtained the required 1,000 sponsorship signatures. The Attorney General did not prepare a draft ballot title for IP 29 (2018). No one was given the opportunity to comment on it. The Attorney General simply certified a ballot title for the measure, as instructed by the Appellate Commissioner. And petitioners and chief petitioners sought review of that certified ballot title. Given that this court's authority to review the legal sufficiency of a ballot title "extends only to those cases in which the statutory prerequisites to review have been satisfied," *Sizemore*, 327 Or at 74, this court lacks authority to act on those petitions.

Chief petitioners Geddry and Booker insist that all statutorily required prerequisites have, in fact, been satisfied in that they filed a prospective petition for IP 55 (2016), obtained the requisite number of sponsorship signatures for *that* measure, and obtained a draft ballot title from the

Attorney General on which public comments were received. Their argument, however, rests on the premise that it is of no moment that the constitutional deadline for supplying initiative petition signatures on that measure passed last year, as did the election itself in November 2016. As chief petitioners see it, IP 55 (2016) is in actuality the measure before us; it has simply been given a new number. According to chief petitioners, nothing in the law constrains them to complete the process within any particular two-year election cycle.

Chief petitioners are mistaken in their understanding of how the initiative process works. Taken together, the statutory and constitutional process that we have described contemplates that it must be completed by the prescribed deadlines in reference to each "regular general election." In the phrasing common to this area, that is referred to as an "election cycle." A measure filed in an election cycle must satisfy all statutory and constitutional requirements and be placed on the ballot in that election cycle. Thus, for example, if the proponents of a given measure fail to collect the required number of signatures by the constitutional deadline of four months before the next regular general election, Or Const, Art IV, § 1(2)(e), their measure effectively expires for failure to satisfy that particular requirement. If they wish to put their measure on the ballot at another election, they have to start over during the next election cycle.

That is certainly the way that this court has construed the law. It has concluded, for example, that challenges regarding the certification of a measure become moot once the election cycle for that measure has passed. On point in that regard is *Kerr v. Bradbury*, 340 Or 241, 131 P3d 737 (2006). In that case, the Secretary of State had approved an initiative petition, but plaintiffs sought judicial review, asserting that it failed to comply with the "full-text" requirement of Article IV, section 1. The Marion County Circuit Court agreed with the secretary, but the Court of Appeals reversed. *Kerr*, 340 at 241. By the time that the case reached the Supreme Court, however, the regular general election had passed. The chief petitioners pressed the court to rule on the merits of the full-text issue anyway, but this

court refused, concluding that, with the passage of the regular general election, the matter had become moot. *Id*. at 245.

The same thing happened in *Dale v. Bradbury*, 330 Or 567, 10 P3d 944 (2000). In that case, the Court of Appeals determined that an initiative measure violated the separate-amendment requirement of Article XVII, section 1, and consequently could not be circulated. *See [Dale v. Keisling](#)*, 167 Or App 394, 999 P2d 1229 (2000). The chief petitioners sought review in this court. In the meantime, the deadline for submitting initiative petition signatures for that election cycle passed. This court dismissed the petition for review, because the case was moot.

That is also, it bears noting, the way that the Secretary of State has interpreted the law. The *State Initiative and Referendum Manual*—which the secretary adopted as an administrative rule, OAR 165-014-0005—plainly provides:

> "To ensure uniformity within a petition cycle and to avoid voter confusion only one petition cycle will be approved for circulation during a two year period. Approval to circulate for the 2018 cycle will not be given until after July 8, 2016, the deadline to submit signatures for the 2016 General Election."

*Id*. at 3. The *Manual* goes on to state that, "[i]f the filing deadline has passed and chief petitioners failed to submit enough valid signatures, the petition is void." *Id*. at 14.

Interpreting the law in that way only makes sense. In fact, a number of anomalies would attend reading the law as chief petitioners propose. Take this case, for example, in which the Attorney General certified a ballot title for IP 29 (2018) based on comments that had been submitted concerning IP 55 (2016), which had been circulated the year before. In fact, no one has yet had an opportunity to comment on IP 29 (2018). Moreover, the process of simply renumbering the measure and certifying it on the basis of comments from the last election cycle precludes any electors who have more recently become eligible to vote during the intervening period from participating in the process. Likewise, it forecloses anyone from taking into account any intervening changed circumstances or modifications to relevant law. We

find it highly unlikely that the legislature and the framers of Article IV, section 1, intended the law to work like that.

Chief petitioners have not cited any rule, statute, or constitutional provision suggesting that proponents of a given measure have an indefinite amount of time to complete the initiative process, and we are aware of none. In fact, the tightly crafted, interconnected series of deadlines that we have described strongly declares the contrary to be the case. Thus, to the extent that chief petitioners contend that they have fully complied with all statutory prerequisites to ballot title review based on their efforts with respect to IP 55 (2016), that contention is unavailing, because, with the passage of the deadline for producing initiative petition signatures for the 2016 regular general election, that measure failed.

It could be argued that our decision in this case necessarily means that the trial court erred in ordering the Secretary of State to assign a new initiative petition number to IP 55 (2016) and approve the renumbered measure for circulation, long after the deadline passed for submitting signatures for the 2016 election cycle, which effectively determines the issues currently pending before the Court of Appeals in *Geddry v. Richardson* (A164828). That may be. But, as this court explained in *Crew/Garcia v. Myers*, 336 Or 635, 638-39 n 3, 89 P3d 1181 (2004), "it is this court's obligation to assure itself in each case that it in fact has the authority to proceed." In this case, for the reasons that we have given, we do not have authority to proceed.

In short, although the Attorney General issued a certified ballot title, the fact remains that a number of statutory prerequisites to this court's review of the legal sufficiency of that ballot title have not been satisfied. We therefore lack authority to proceed.

The petitions to review the ballot title are dismissed.